IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TOTH ENTERPRISES II, P.A. *d/b/a Victory Medical & Family Care*, WILLIAM FRANKLIN, KATHERINE KELLER, NATHAN PEKAR, SHAWN AGENBROAD-ELANDER, BRITANY ADAMS, SARITA PRAJAPATI, DIAGNOSTIC GESTALT, LLC, and SHARON SHEPARD, | § § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:23-CV-542-RP |
| JEAN-PAUL FORAGE, LEWIS NICHOLS, CLAY ELLIS, LN PROFESSIONAL MANAGEMENT LLC *d/b/a Medical Management Professionals*, and ALLIED LAB SOLUTIONS MANAGEMENT, LLC, | § § § § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is a motion to dismiss filed by Defendants Jean-Paul Forage, Lewis Nichols, Clay Ellis, LN Professional Management LLC d/b/a Medical Management Professionals ("MMP"), and Allied Lab Solutions Management, LLC ("Allied Management") (collectively, "Defendants"). (Dkt. 15). Plaintiffs Toth Enterprises II, P.A. d/b/a Victory Medical & Family Care ("Victory Medical"), William Franklin, Katherine Keller, Nathan Pekar, Shawn Agenbroad-Elander, Britany Adams, Sarita Prajapati, Diagnostic Gestalt LLC ("Gestalt"), and Sharon Shepard (collectively, "Plaintiffs") filed a response, (Dkt. 20), and Defendants replied, (Dkt. 21). Having considered the parties' briefs, the record, and the relevant law, the Court will grant the motion in part and deny the motion in part.

## I. BACKGROUND

Plaintiffs allege the following background facts. In 2016, Plaintiffs, except for Gestalt, formed Allied Lab Solutions, LLC ("Allied") to provide medical lab services to rural hospitals. (Am. Compl., Dkt. 14, at 15). Plaintiffs entered into the Allied company agreement and became members of the LLC. (*Id.*). Plaintiffs then formed Allied Lab Solutions Management, LLC ("Allied Management") for the sole purpose of distributing money from MMP to Allied. (*Id.*; *see also* Ellis Dep., Dkt. 14-4, at 15 ("Allied Lab Solutions Management . . . was set up more so as a trust account, so that there wasn't . . . commingling of funds that were due to other entities.")). Ellis was appointed as member-manager of both Allied and Allied Management. (*Id.*). Around the same time, Nichols formed Medical Management Professionals ("MMP"), also with the purpose of providing lab services to rural hospitals. (*Id.*). Plaintiff Gestalt became a member of MMP. (*Id.*). Nichols was appointed as a member-manager of MMP. (*Id.* at 16).

In April 2017, Allied and MMP entered into a Service Agreement, (Ex. A, Dkt. 14-1), in which they agreed to perform lab services for several rural hospitals ("Participating Rural Hospitals"). (Am. Compl., Dkt. 14, at 16.) The Service Agreement was set up such that MMP would perform various lab services for the Participating Rural Hospitals. (*Id.* at 20–21). The Participating Rural Hospitals would bill the insurance carriers for the services performed. (*Id.*) The insurers would then pay the Participating Rural Hospitals, and the hospitals would pay MMP 75 percent of the insurance payments. (*Id.*). Under the Service Agreement, MMP would pay 55 percent of those monies to Allied Management. (*Id.*). Allied Management would then give that payment in full to Allied, and Allied would make payments to its members, including Plaintiffs (save for Gestalt), based on their membership share. (*Id.*). Gestalt was a 20 percent member of MMP and was entitled to 20 percent of the profits of MMP. (*Id.* at 4–5).

**November 2016 to April 2019**

From December 2016 to April 2019, Defendants repeatedly misreported the income that MMP was receiving from the Participating Rural Hospitals to Plaintiffs. (*Id.* at 22). Each month when MMP and Nichols received payments from the Participating Rural Hospitals for their lab services, they created a false report showing that MMP received less money from its lab services than it actually did. (*Id.*). MMP and Nichols sent these reports to Allied's manager each month along with 55 percent of the falsely reported income. (*Id.*). Ellis, who was the member-manager of Allied Management and Allied from November 2016 to April 2017, and Forage, who was the member-manager of Allied Management and Allied from May 2017 to April 2019, then sent the falsified reports to Allied's members along with a check for their membership share. (*Id.* at 22–23). Ellis and Forage knew that the reports were falsified and that the amount of money going to each member was incorrect. (*Id.* at 25). Ellis deposited some of MMP's unreported money in a bank account for another one of his companies located in Colorado. (*Id.* at 36). Ellis and Forage also sent Allied's members tax forms each year to confirm the amount of money they received from their membership share; these forms reflected the falsely understated amounts from MMP's financial reports. (*Id.* at 36). Plaintiffs allege that Defendants committed both wire fraud and money laundering in carrying out the above-described scheme. (*Id.* at 6).

Gestalt, who is a member of MMP rather than Allied, also received fraudulent financial reports concerning the amount of money that MMP was receiving from the Participating Rural Hospitals. (*Id.* at 42–45). His pay according to his membership share and resulting tax forms were also based on the fraudulent financial reports instead of MMP's true income. (*Id.*).

**April 2019 to Present**

MMP sent their final falsified report to Allied in May 2019 reflecting incorrect amounts collected from the Participating Rural Hospitals in April 2019. (*Id.* at 36). From May 2019 to June

2020, MMP failed to make any payments to Allied Management, Allied, and subsequently Plaintiffs. (*Id.* at 37). Nichols, Ellis, and Forage claimed that MMP had not received any monies from Participating Rural Hospitals since April 2019. (*Id.; see also* Forage Aff., Dkt. 14-3, at 2; *see also* Ellis Dep., Dkt. 14-4, at 22). However, a declaration from Stephen Kuehler, the CEO of Knox County Hospital District, one of the Participating Rural Hospitals, shows that MMP received $2,425,725.17 between May 2019 and June 2020 from Knox County Hospital District alone. (Kuehler Decl., Ex. E, Dkt. 14-5).

In October 2020, Forage, acting as Allied's manager, terminated Allied and Allied Management by filing termination papers with the Texas Secretary of State. (Am. Comp., Dkt 14, at 41). He did so without the consent of Allied's members. (*Id.*). Plaintiffs believe this was an attempt to cover up Defendants' scheme to skim money from MMP's income. (*Id.*). In the summer of 2022, MMP belatedly received a payment from one of the Participating Rural Hospitals for approximately $6,000,000. Rather than paying Allied its 55 percent, Defendants told Plaintiffs that all of this sum was used to pay MMP's past expenses. (*Id.*).

In their action against Defendants, Plaintiffs assert five causes of action: (1) RICO violations under 18 U.S.C. § 1962(c); (2) RICO violations under 18 U.S.C. § 1962(d); (3) breach of fiduciary duties against Defendants Ellis and Forage; (4) fraud; and (5) conversion. (Am. Compl., Dkt. 14). Defendants filed a motion to dismiss the RICO claims against them under Federal Rule of Civil Procedure 12(b)(6) and to then decline to exercise supplemental jurisdiction over the remaining state claims. (Mot., Dkt. 15). In the alternative, Defendants ask the Court to dismiss the breach of fiduciary claim and the conversion claim under Rule 12(b)(6) as well. (*Id.*). Defendants do not attack Plaintiffs' fraud claim under Rule 12(b)(6). (*Id.*).

4

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to

dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

Defendants' motion contends that (1) Plaintiffs have failed to state their RICO claims; (2) Plaintiffs cannot bring a breach of fiduciary duty claim; and (3) Plaintiffs' conversion claim is time barred. (Mot., Dkt. 15). The Court will address each in turn.

### A. Plaintiffs Sufficiently Pleaded RICO Claims Brought in Individual Capacities

The federal RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Any person injured in his business or property by reason of a violation of section 1962" may bring a civil suit for treble damages. *Id.* § 1964(c). "To state a claim under § 1962(c), a plaintiff must adequately plead that the defendant engaged in '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Molina-Aranda v. Black Magic Enters., LLC*, 983 F.3d 779, 784 (5th Cir. 2020) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

#### 1. Plaintiffs Sufficiently Pleaded Claims in an Individual Capacity

In their Motion to Dismiss, Defendants contend that Plaintiffs lack standing, or lack capacity,[1] to bring RICO claims against Defendants individually. (Dkt. 15, at 7).

---

[1] The Fifth Circuit uses the terms "standing" and "capacity" in relation to RICO claims brought in an individual capacity. *See Whalen v. Carter*, 954 F.2d 1087, 1091 (5th Cir. 1992). The Texas Supreme Court has stated that "[a] plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 775 (Tex. 2020).

"The civil RICO statute itself does not impose much of a standing requirement upon plaintiffs in RICO actions: it merely provides that RICO plaintiffs must have been injured 'by reason of' a predicate act or acts which constitute a violation of RICO section 1962." *Whalen v. Carter*, 954 F.2d 1087, 1090 (5th Cir. 1992) (citing 18 U.S.C. § 1964(c)). However, "the RICO standing analysis does not end with a simple finding that there is a causal relation between predicate acts and the subsequent injury." *Id.* at 1091. A court must first "determine whether any non-RICO standing requirements apply and have been satisfied" before asking whether the plaintiff has demonstrated that predicate acts that violate RICO section 1962 caused the plaintiff injury. *Id.* The Fifth Circuit has held that courts should apply a three-part test to determine whether plaintiffs individually bringing claims analogous to shareholder derivative claims satisfy general capacity requirements: (1) whether the racketeering activity was directed against the corporation; (2) whether the alleged injury to the shareholders merely derived from, and thus was not distinct from, the injury to the corporation; and (3) whether state law provides that the sole cause of action accrues in the corporation. *Id.*; *see also Joffroin v. Tufaro*, 606 F.3d 235, 238 (5th Cir. 2010). "If each of these questions can be answered 'yes,' then the shareholders do not have the requisite standing." *Whalen*, 954 F.2d at 1091.

This three-part standing analysis can also be applied in the context of a limited partner attempting to bring RICO claims in an individual capacity against a fellow partner. *Id.* at 1093. In the instant case, the entities involved are neither corporations nor partnerships. Instead, Allied, Allied Management, and MMP are all limited liability companies. (Am. Compl., Dkt. 14, at 10). Plaintiffs Franklin, Victory Medical, Shepard, Keller, Pekar, Prajapati, Agenboard-Elander, and Adams, as well as Defendants Forage, Ellis, and Allied Management are or were members of Allied. (*Id.* at 15). Plaintiff Gestalt and Defendant Nichols are members of MMP. (*Id.* at 16). However, a "limited liability company . . . is a business entity that contains certain characteristics of both a corporation

and a partnership." *Cardwell v. Gurley*, No. 4-10-CV-706, 2011 WL 6338813, at *9 (E.D. Tex. Dec. 19, 2011), *aff'd sub nom. In re Cardwell*, 487 Fed. Appx. 183 (5th Cir. 2012). Thus, the Court will apply the same three-part test used for shareholders and partners.

Defendants argue that Plaintiffs fail all three parts of the Fifth Circuit's test. (Mot., Dkt. 15, at 8–10). First, Defendants assert that Plaintiffs' theory of the case—that Defendants diverted money from Allied and subsequently Allied's members—proves that the racketeering activity was directed against Allied, not the individual members of Allied. (*Id.* at 9). Second, Defendants state that Plaintiffs' alleged injuries are not distinct from the alleged injury to Allied. (*Id.*). Specifically, "Plaintiffs allege that Defendants underpaid Allied, and thus they were injured because they received fewer profits from Allied than they otherwise would." (*Id.*). Third, Defendants argue that Texas law does not permit individual stakeholders to recover personally for harms done to the legal entity. (*Id.*) (citing *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

The Court agrees with Defendants that Plaintiffs have not sufficiently pleaded that their injuries are *not* derived from, and therefore distinct from, Allied's injuries. Plaintiffs are members of Allied, meaning that they are entitled to their membership share of Allied's profits. It is only because of this relationship with Allied that Plaintiffs received less profit than they would have if not for Defendants' alleged racketeering activity. *See Whalen*, 954 F.2d at 1092 ("These injuries are nothing more than a different manifestation of the same injury that the corporation suffered in the fraudulent transfer of its assets.") Lost profit is the only injury alleged by Plaintiffs. (Am. Compl., Dkt. 14, at 1–2). Thus, the Court agrees with Defendants that Plaintiffs have not pleaded sufficient facts to show that their injuries are distinct from Allied's injury.

However, the Court finds that Plaintiffs have sufficiently pleaded that Defendants' racketeering activity was directed at the members individually rather than solely at Allied. In *Whalen*,

the Fifth Circuit noted that the plaintiffs' complaint alleged that the defendant had "made false statements to the plaintiffs in an effort to obtain money from them." 954 F.2d at 1092 n.2. Although the Court ultimately found that the plaintiffs had failed to plead that they relied on those false statements to their detriment, it stated that the defendant's false statements "constitute[d] a wrongful act directed toward the plaintiffs, rather than the corporation." *Id.* Here, Plaintiffs did allege that they acted in reliance on Defendant's false statements by trusting that the monthly financial reports and checks from MMP and Allied were correct. (Am. Compl., Dkt. 14, at 5). If Plaintiffs did not allege that Allied's managers knew of and actively participated in the scheme, then Defendants would be correct in stating that only Allied was targeted and not its individual members. But Plaintiffs have sufficiently shown at this stage that Defendants targeted their activities not only at Allied but also at its individual members.

The Court also finds Texas law does not provide that the sole cause of action accrues in the corporation. In *Whalen*, the Fifth Circuit held that the plaintiffs could bring RICO claims in an individual capacity against the defendants in their capacities as partners because Louisiana state courts had allowed a disaffected partner in an injured partnership to bring claims against the partner that caused the injury. 954 F.2d at 1094. Although generally Louisiana courts have held that "as long as a partnership exists and has not been dissolved or liquidated, the partnership itself is the proper party to maintain an action for damages to the partnership," the Fifth Circuit held that Louisiana courts had recognized an exception to this rule when injury to a partnership is caused by a partner with a fiduciary duty to the partnership. *Id.* at 1093.

As mentioned above, Defendants contend that Texas law is crystal clear: "[It] is well settled than an individual stakeholder in a legal entity does not have a right to recover personally for harms done to the legal entity." (Mot., Dkt. 15, at 9) (citing *Siddiqui*, 504 S.W.3d at 360). Indeed, Texas courts generally have held that a member of a limited liability company lacks standing to assert

claims individually where the cause of action belongs to the company. *See, e.g.*, *Sherman v. Boston,* 486 S.W.3d 88, 94 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). However, much like in Louisiana courts, some Texas courts that have recognized exceptions to this general rule. In *Saden v. Smith,* 415 S.W.3d 450, 463 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (cleaned up), the court stated that "a shareholder may nevertheless recover damages for wrongs done to him individually when he pleads and proves that the defendant has violated a duty that he owed the shareholder." The court found that because the plaintiff and the defendant were the sole shareholders of a closely held corporation and because the injury suffered by the corporation injured the plaintiff shareholder but not the defendant shareholder, the plaintiff could bring claims of breach of contract and breach of fiduciary duty against the defendant in an individual capacity. *Id.* at 457–59. This Court, in *French v. Fisher,* No. 1:17-CV-248-DAE, 2018 WL 8576652, at *7 (W.D. Tex. Aug. 27, 2018), allowed a plaintiff, who was a member of an LLC, to bring claims of breach of contract and breach of fiduciary duty against the defendant in an individual capacity. Similar to the parties in *Saden,* the parties in *French* were the sole members of a closely held LLC. *Id.* The Court noted that the plaintiff had a "unique and independent injury" from that of the LLC because the plaintiff claimed that the defendant was dissipating and concealing the profits of the LLC to his benefit and to the plaintiff's detriment. *Id.* at *8.

Like the defendants in *Saden* and *French,* Defendants Ellis, Forage, Allied Management, and Nichols used their status as members of an LLC to benefit themselves to the detriment of the other members of Allied and MMP. Viewing the allegations of the amended complaint in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have sufficiently pleaded enough facts showing that they were targeted as individuals and that Texas law could allow for the individual members to

have a cause of action separate from that of the LLCs. Thus, the Court finds that Plaintiffs may bring claims against Defendants in their individual capacities.[2]

### 2. Plaintiffs Fail to Sufficiently Plead Claims in a Derivative Capacity

Federal Rule of Civil Procedure 23.1 requires a shareholder derivative complaint to state with particularity "any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members" and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1. Since Rule 23.1 does not identify any substantive standards for these efforts, "the particularity of a plaintiff's pleadings is governed by the standards of the state of incorporation." *Freuler v. Parker*, 803 F. Supp. 2d 630, 636 (S.D. Tex. 2011), *aff'd*, 517 F. App'x 227 (5th Cir. 2013). Here, Allied and MMP are both Texas LLCs. (Am. Compl., Dkt. 14, at 10). The Texas Business Code sets forth standing requirements for members of LLCs who wish to bring claims in a derivative capacity, or on behalf of the LLC itself. Section 101.452 states that a member must have been a member of the LLC at the time of the act or omission complained of and must fairly and adequately represent the interests of the LLC in enforcing the right of the LLC. Section 101.453 states that a member "may not institute a derivative proceeding until the 91st day after the date a *written* demand is filed with the limited liability company stating with particularity the act, omission, or other matter that is the subject of the claim or challenge and requesting that the limited liability company take suitable action" (emphasis added).

Defendants argue that Plaintiffs have failed to plead that they fairly and adequately represent the interests of the LLC and that they made a written demand for the LLC to take action and were rejected. (Mot., Dkt. 15, at 10–11). Defendants also contend that Plaintiffs have not pleaded enough

---

[2] It is unclear to the Court what claims Plaintiff Gestalt, as the only plaintiff who is not a member of Allied, is bringing. Plaintiffs fail to state whether Gestalt brings claims in an individual capacity and/or a derivative capacity. (*See* Am. Compl., Dkt. 14, at 9–10). Because Plaintiffs allege that Gestalt was subject to the same scheme as the Allied members and similarly targeted, (*id.* at 4–5), the Court will allow Gestalt to proceed with the RICO claims in its individual capacity.

facts to show that the RICO claims are not collusive ones pleaded just to confer jurisdiction on the federal court. (*Id.* at 11 (citing Fed. R. Civ. P. 23.1(b)(2))). As discussed above, the Court finds that Plaintiffs have sufficiently pleaded a RICO claim in their individual capacities and therefore the Court does not believe there is sufficient evidence that Plaintiffs only pleaded a RICO claim to get into federal court at this time. Further, the Court finds that Plaintiffs, as several members of Allied who benefit from Allied's success, have pleaded enough facts to show that they fairly and adequately represent the interests of the LLC. However, the Court agrees with Defendants that Plaintiffs have failed to plead that they filed a written demand with Allied or MMP that stated the act or omission that is the subject of this suit and demanded action. While Plaintiffs did plead that they made two requests to Defendant Forage to bring a suit on behalf of Allied, (Am. Comp., Dkt. 14, at 41), they fail to allege that these demands were written.

In their response, Plaintiffs simply reiterate the statements from their amended complaint: that they made two demands to Defendant Forage to bring an action on the basis of the alleged fraudulent activities through an attorney acting on their behalf and that Defendant Forage rejected both demands. (Resp., Dkt 20, at 10–11). The Court notes that Plaintiffs seem to have strategically eliminated the word "written" when providing a quote from Section 101.453. (*See id.*). Because Plaintiffs have failed to allege that they have met the conditions to bring a derivative claim on behalf of Allied required Texas law, the Court finds that Plaintiffs' claims, to the extent they are brought in a derivative capacity, are dismissed.[3]

### 3. Plaintiffs Sufficiently Pleaded their RICO Claim

"Claims under RICO, 18 U.S.C. § 1962, have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment,

---

[3] Once again, it is unclear whether Plaintiff Gestalt is attempting to bring any claims in a derivative capacity on behalf of MMP. To the extent that Gestalt is attempting to bring suit in a derivative capacity, the Court dismisses those claims. Plaintiffs' amended complaint pleaded no facts related to Gestalt's satisfaction of the Texas Business Code's standing requirements for LLC members wishing to sue in a derivative capacity.

conduct, or control of an enterprise.'" *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (citing *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)).

Defendants do not contest Plaintiffs' sufficiency in pleading elements one or three. Defendants solely attack Plaintiff's pleading regarding element two—a pattern of racketeering activity. (Mot., Dkt. 15, at 11).  "A pattern of racketeering activity consists of two or more predicate acts that are (1) related and (2) amount to or pose a threat of continued criminal activity. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 524 (5th Cir. 2016) (citing *St. Germain*, 556 F.3d at 263); *see also H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 239 (1989)). The RICO statute proscribes various categories of predicate acts that may constitute racketeering activity, including wire fraud and money laundering as Plaintiffs allege here. *See* 18 U.S.C. § 1961(1). Continuity can either be a closed- or open-ended concept: a closed period of repeated conduct or past conduct that by its nature projects into the future with a threat of repetition. *H.J. Inc.*, 492 U.S. at 241.

Defendants state that "Plaintiffs fail to plead specific information to establish a pattern of racketeering beyond a single discrete scheme" and therefore do not satisfy the RICO requirement of open or closed pattern continuity. (Mot., Dkt. 15, at 12). The Court disagrees. Plaintiffs alleged that Defendants repeatedly skimmed money that was owed to Allied and its members between 2016 and 2019. (Am. Compl., Dkt. 14, at 40). They also alleged that Defendants have lied about receiving profits at all from the Participating Rural Hospitals from May 2019 to the present and have falsely asserted that incoming settlement funds owed to Allied were used to cover MMP's past expenses. (*Id.* at 40–42). While Defendants are correct that this amounts to a single scheme done repeatedly— falsely reporting income in order to keep more profit for themselves—Plaintiffs have met their pleading burden when it comes to a pattern of racketeering.

The Fifth Circuit has held that in RICO cases, "[f]or pleading purposes, we must determine whether a pattern of racketeering has been alleged that is sufficiently similar to what the Supreme

Court contemplated in its *H.J. Inc.* discussion and what this Court has held to constitute a pattern of racketeering." *Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007). In *H.J. Inc.*, the Supreme Court held that "it is implausible to suppose that Congress thought continuity might be shown *only* by proof of multiple schemes." 492 U.S. at 240 (emphasis in original). After stating that "[w]hether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case," the Court gives an example of what might seem to be a single scheme that still satisfies the pattern requirement. *Id.* at 242 (describing a person selling fake "insurance" to storekeepers and collecting a "premium" each month). The Court stated that although the "number of related predicates may be small," the "specific threat of repetition extending indefinitely into the future" supplies the "requisite threat of continuity." *Id.* The Court also stated that the "continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* at 243.

Plaintiffs have pleaded facts that when taken as true both show a "specific threat of repetition extending indefinitely into the future" and a series of predicates that are Defendants' "regular way of conducting . . . ongoing legitimate business." There is nothing indicating that Defendants would have stopped skimming money without Plaintiffs' ensuing lawsuit. *See Abraham*, 480 F.3d at 356 (holding that there was a pattern of racketeering when there was no reason to believe the predicate acts would not have continued indefinitely had suit not been filed). There was no end date to this alleged activity. Although Defendants argue that the Services Agreement between MMP and Allied was for a limited period from 2016 to 2020, (Mot., Dkt. 15, at 6), Plaintiffs allege that MMP's relationship with Allied has continued and has the potential to continue because of settlements between insurance carriers and the Participating Rural Hospitals resulting in delayed payments to MMP. (Am. Compl., Dkt. 14, at 47). Further, the deposition of Ellis taken in 2020, which Plaintiffs properly attached to their amended complaint, suggests that MMP was still in

operation and had employees, including Ellis. (Ex. D, Dkt. 14-4, at 85–87). Plaintiffs' amended complaint also suggests that skimming money before paying Allied was Defendants' regular way of conducting their otherwise legal, ongoing business. Plaintiffs do not assert that Defendants skimmed money and distributed false financial reports solely on one occasion; they allege that Defendants repeated these actions every month for a period of years. (Am. Compl., Dkt. 14, at 27–29). The repetitive predicate act of skimming money that belonged to someone else and sending fraudulent income reports, resulting in the repetitive acts of sending checks and tax forms to Allied's members, seem to be all in a day's work for Defendants.

Defendants point to case law from the D.C. Circuit to argue that a single scheme with a single harm and a single set of victims is not a pattern of racketeering. (Mot., Dkt. 15, at 12–13 (citing *W. Assocs. Ltd. P'shp. v. Mkt. Square Assocs.*, 235 F.3d 629, 631 (D.C. Cir. 2001))). However, Defendants do not point to any Fifth Circuit opinion that sets such a strict pleading requirement for RICO claims. Further, the facts of *Western Associates* are distinguishable from those of the present case. The D.C. Circuit stated that "[Defendant]'s conduct can basically be characterized as beginning with fraudulent budget underestimates, with the subsequent predicate acts serving as attempts to cover up or shift the debt burden caused by cost overruns" and that "most of the predicate acts were mailings or faxes that relate back to an initial misrepresentation." *W. Assocs. Ltd. P'shp.*, 235 F.3d at 636. There is more than just an "initial misrepresentation" in the instant case. Every predicate act of mailings or money laundering was to cover up the *most recent* fraudulent activity of Defendants, not simply one initial act of fraud that resulted in an unbalanced budget. Because Plaintiffs have sufficiently pleaded that Defendant's predicate acts were not only repetitive and likely to continue but also done in the ordinary course of Defendants' businesses, the Court finds that Plaintiffs have sufficiently alleged a pattern of racketeering and their RICO claims brought in their individual capacities should not be dismissed.

4. RICO Conspiracy Claim

Defendants argue that Plaintiffs' RICO conspiracy claim under Section 1962(d) must be dismissed because Plaintiffs have failed to state a substantive RICO claim. (Mot., Dkt. 15, at 18). However, since the Court has determined that Plaintiffs have sufficiently plead a substantive RICO claim, the Court will not dismiss Plaintiffs' RICO conspiracy claim.

**B. Plaintiffs May Bring Breach of Fiduciary Duty Claims**

Defendants argue that even if the Court finds that Plaintiffs' RICO claims survive Defendants' motion to dismiss, the Court should still dismiss Plaintiffs' breach of fiduciary duty claim against Defendants Forage and Ellis because Forage and Ellis "owed fiduciary duties only to Allied, and not to the Plaintiffs as individual members of Allied." (Mot., Dkt. 15, at 19).

Defendants are correct that Texas courts have generally held that fiduciary duties of a corporate director "run to the corporation, not to the individual shareholders." *Straehla v. AL Glob. Servs., LLC,* 619 S.W.3d 795, 805 (Tex. App.—San Antonio 2020, pet. denied). However, "[n]either the Texas Limited Liability Company Act . . . nor the subsequently-enacted limited liability company provisions of the Texas Business Organizations Code . . . directly address the duties owed by managers and/or members of limited liability companies." *Cardwell v. Gurley*, No. 05-09-01068-CV, 2018 WL 3454800 (Tex. App.—Dallas July 18, 2018, pet. denied) (citing Tex. Bus. Orgs. Code Ann. § 101.401). "Both, however, presume the existence of fiduciary duties, providing that a limited liability company may 'expand or restrict' any duties (including fiduciary duties) of a member, manager, officer, or other person." *Id.*

Texas courts have recognized a fiduciary duty between a manager member of an LLC and an individual member of an LLC in certain contexts. In *Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 392–93 (Tex. App.—Houston [1st Dist.] 2012, no pet.), the court found that a "sole member-manager" of an LLC who had "a high degree of control" over the LLC's day-to-day

operations was more analogous to a general partner in a limited partnership than a director or majority shareholder in a corporation. Thus, because "a general partner in a limited partnership owes a fiduciary duty to the limited partners because of its control over the entity," *id.* at 391, and because the member manager "[had] a legal right of control and exercise[d] that control by virtue of his status," *id.* at 395, the court concluded that there was a formal fiduciary relationship between the member-manager and the individual members in the specific context of purchasing a minority member's interest, *id.* at 396. Similarly, in *Cardwell v. Gurley*, No. 4-10-CV-706, 2011 WL 6338813, at *9 (E.D. Tex. Dec. 19, 2011), *aff'd sub nom. In re Cardwell*, 487 Fed. Appx. 183 (5th Cir. 2012), a federal district court upheld a Texas trial court's finding that a member-manager of an LLC owed another member "direct fiduciary duties of loyalty, due care, and full disclosure as a matter of law." The court noted that the Fifth Circuit has held that "persons exercising control of a business owe trust-type obligations to partners and shareholders that do not control the business." *Id.* at *8.

The Court finds these cases to be illuminating as to whether member-managers of an LLC can ever be held to owe a fiduciary duty to the individual members of the LLC and not just the LLC itself.[4] Plaintiffs alleged that both Defendants Ellis and Forage actively worked to mislead Plaintiffs as to how much money they were entitled to through their membership shares of Allied. (Am. Compl., Dkt. 14, at 4). Plaintiffs also alleged that Defendants Ellis and Forage ran the day-to-day operations of Allied as the managing members, which allowed them to mislead Plaintiffs. (*Id.* at 15). Adding to the alleged authority of Ellis and Forage to oversee Allied is the fact that Ellis and Forage were also the member-managers of Allied Management, which was also a member-manager of

---

[4] In their response to Defendants' Motion to Dismiss, Plaintiffs suggest that some sort of informal duty may exist between Plaintiffs and Defendants Ellis and Forage because of relationships between the parties that existed prior to the formation of Allied and MMP. (Resp., Dkt. 20, at 20). However, Plaintiffs' Amended Complaint, (Dkt. 14), did not allege any facts supporting informal duties between the parties. The Court finds that Plaintiffs have sufficiently pleaded that Defendants Ellis and Forage owed a fiduciary duty to the members of Allied because of the control Ellis and Forage exerted over Allied, not because of any informal, preexisting relationships.

Allied. (*Id.* at 15–16). Thus, Plaintiffs, except for Gestalt, may proceed with their breach of fiduciary claims against Defendants Ellis and Forage.[5]

## C. Plaintiffs' Conversion Claim is Time-Barred

Texas law imposes a two-year statute of limitations on conversion claims. *See* Tex. Civ. Prac. & Rem. Code § 16.003. Defendants finally argue that Plaintiffs' conversion claim against all Defendants should be dismissed as time-barred by the statute of limitations. (Mot., Dkt. 15, at 19). The Court agrees. Plaintiffs pleaded that they learned of the May 2019 through June 2020 fraudulent acts in an affidavit given by a CEO of one of the Participating Rural Hospitals in January 2021. (Am. Compl., Dkt. 14, at 40; Kuehler Decl., Ex. E, Dkt. 14-5). Plaintiffs then stated that despite being able to examine all of the cancelled checks disclosed by the CEO in the affidavit at that time, which range from 2016 to 2021, they were not aware of Defendants' fraudulent acts from 2016 to 2019 until they read an affidavit from an MMP accountant in December 2022. (Am. Compl., Dkt. 14, at 40; David Aff., Dkt. 14-2). Plaintiffs filed their complaint in this Court, alleging conversion, on May 15, 2023. (Compl., Dkt. 1).

Texas courts recognize an exception to their codified statutes of limitations when certain elements are met. "The discovery rule exception operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). The discovery rule exception is very limited and should only be employed when "the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Id.* at 735; *see also Beavers v. Metro. Life Ins.*, 566 F.3d 436 (5th Cir. 2009). To decide if an injury is "inherently undiscoverable," the court should

---

[5] To the extent that Plaintiff Gestalt is bringing a claim of breach of fiduciary duty against Defendants Ellis and Forage, its claim is dismissed. Gestalt was never a member of Allied and Plaintiffs did not plead any facts showing a fiduciary duty between Gestalt and Ellis or Forage.

ask whether the injury is "the type of injury that generally is discoverable by the exercise of reasonable diligence." *Id.* (citing *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)).

Here, Plaintiffs' injury was not inherently undiscoverable in January of 2021 when *all* of the checks written by one of the Participating Rural Hospitals to MMP between 2016 and 2020 were available to Plaintiffs. Plaintiffs did not plead that there was a reason that they could not discover the alleged fraud committed between 2016 and 2019 by examining the checks provided by the affidavit in January of 2021. Plaintiffs state that they "did not (and could not) know the breadth of Defendants' scheme" until December of 2022. However, Plaintiffs have already admitted that they examined the cancelled checks disclosed by the CEO in January of 2021 and realized that "Defendants had been taking for themselves millions of dollars of payments due Plaintiffs." (Am. Compl., Dkt. 14, at 40). Therefore, because Plaintiffs did not file their complaint in this Court until May of 2023, their conversion claim is time-barred and must be dismissed.

## IV. CONCLUSION

In conclusion, Plaintiffs' claims brought in a derivative capacity are dismissed. Plaintiffs may proceed with their RICO claims brought against all defendants in their individual capacities. Plaintiffs, except for Gestalt, may proceed with their breach of fiduciary claim against Defendants Ellis and Forage in their individual capacities. Plaintiffs may proceed with their fraud claims against all defendants in their individual capacities.[6] Plaintiffs' conversion claim is dismissed.

---

[6] Defendants do not assert that Plaintiffs' fraud claim should be dismissed under Rule 12(b)(6). (*See* Mot., Dkt. 15, at 3). The Court finds that Plaintiffs have sufficiently pleaded a fraud claim in their amended complaint.

For these reasons, **IT IS ORDERED** that Defendants' motion to dismiss, (Dkt. 15), is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Plaintiffs may file a motion for leave to amend their complaint on or before January 5, 2024.

**SIGNED** on December 18, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

20