# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| WILLIAM FRANKLIN, MD, et al., | |
| Plaintiffs, | |
| vs. | Case No. 1:23-CV-00542 |
| JEAN-PIERRE FORAGE, et al. | |
| Defendants. | |

## DECLARATION OF JOHN J.E. MARKHAM, II, ESQ.

I, John J.E. Markham, II, Esquire, declare as follows:

1.      I am a member in good standing of the state bars of Maine, Massachusetts, New York, and California and of the corresponding federal bars as outlined in my *pro hac vice* application filed with this Court. (Dkt. No. 3.)  I make this declaration to state for this Court the basis I had for including in the Complaint filed in this action the various assertions made by Larry Palmer in his sworn declaration, dated September 6, 2022, which is annexed as Exhibit B to the Original Complaint filed in this action on May 15, 2023 (Dkt. No. 1-3), and as recently restated in the First Amended Complaint (Dkt. No. 14). In essence and as was quoted in the Original Complaint and First Amended Complaint, Palmer swore as follows in that declaration based upon what he stated that he had learned when he was working as a bookkeeper and tax preparer for Defendant LN Professional Management d/b/a Medical Management Professionals ("MMP"):

> For various justifications that Clay Ellis would manufacture, it was common that Clay Ellis would skim off the top from funds that belonged to the Allied Companies. Clay Ellis would direct funds above the 55% LN Professionals was entitled to, to be paid to Clay Ellis personally, or Clay Ellis' LLC in Colorado, or one of Clay Ellis' other Texas LLC's, and Lewis Nichols for his role as co-conspirator of LN

Professionals LLC. Clay Ellis would tell me to write the checks and because he appeared to have the right to hire, fire, and direct me, complied with his directions.

Any amounts LN Professionals LLC ever paid to any party were at the sole direction of Clay Ellis. While Clay Ellis was not legally an owner of LN Professional Management LLC., and Medical Management Professionals LLC., he directed every operational aspect thereto as though he were the sole owner. As time went on, I became increasingly aware that the accounting Clay Ellis was directing me to do was not legal and looked like there was fraud being committed against the shareholders of the Allied company shareholders.

It was routine for Clay Ellis to manufacture fraudulent settlement statements which did not reflect the actual amounts received by MMP. By increasing the monies paid to him, and then providing false or inaccurate settlement statements, Clay Ellis was written checks in excess of the amounts reflected on the statements. This resulted in him taking more money than he was allowed from the Allied company shareholders. The funds that LN Professionals LLC received from their clients would vary, but the numbers were substantial. For most months, the revenue that was received and later skimmed and stolen was well over several hundred thousand dollars a month. There were millions of dollars that were received from various hospital clients. There was always a sizeable amount skimmed and taken by Clay Ellis for himself and directed to his personal companies. These payments were taken off the top, before any split to LN Professionals and Allied Lab Solutions, and then to the members of Allied Lab Solutions. The funds that were skimmed or stolen from the Allied company shareholders would be distributed to Clay Ellis and Lewis Nichols, with MJ Cortez already receiving his 10% money off the top.

As part of my duties as the accountant for MMP, I was aware of the employees and employee compensation. The payments that l am referring to for Clay Ellis which were taken off the top, were not paid to him as an employee, as they were not rerated as employee compensation.

Clay Ellis made all decisions as though he owned LN Professional Management LLC., and Medical Management LLC., and he was compensated at the exact same rate the legal owner of LN Professional Management LLC., Lewis Nichols. At the same time Clay Ellis was not the legal owner of LN Professional Management LLC., and Medical Management LLC., he held himself out to all parties he was in-fact the owner of these companies. This would have all believing Clay Ellis was the owner of these two companies and they could

2

reasonably rely on his directions and representations, and reasonably believed him exercising complete and absolute dominion and control of these two companies was derived from his ownership thereof.

Even though Clay Ellis was not properly accounting for funds that should have gone to the Allied Companies' shareholders, he would manufacture statements for me to use to generate payments to the Allied Companies that those at the Allied company shareholders would receive as an accurate and correct reflection of the funds. If Clay Ellis did not manufacture accounting, the Allied companies' shareholders would have received much more revenue than they actually did.

Clay Ellis specifically directed me to write checks to the members of Allied Lab Solutions, including William Franklin, M.D., and Toth II Enterp1ises, P.A. The amounts to those checks were always the net amounts after the monies off the top that Clay Ellis had directed be paid, including M.J. Cortez, but also himself and on multiple occasions one of his corporations, including one corporation which I understood was located in Colorado.

All this suspicious activity was clearly known by Clay Ellis, Lewis Nichols, and MJ Cortez. It is equally clear that all three were aware of the scheme as they were recipients of the checks directed to be sent them by Clay Ellis. All three were clearly acting on concert as they received checks and payments and the statements reflecting the changing accounting and misstatements of revenue which were then sent to Allied Lab Solutions members. This was all done at the direction of Clay Ellis to me specifically and I was told to write the checks as those statements reflected.

*See* Dkt. No. 1-3. These statements are quoted *verbatim* in the Original Complaint following

paragraph 67 and in the Amended Complaint (Dkt. No. 14) following paragraph 77. I believed

there was a substantial basis for including these statements for the reasons that are explained

below. I also believed, and still do, that there was substantial credible evidence to corroborate

Larry Palmer's assertions in that declaration, notably his essential assertion that Defendant MMP

had failed to pay Plaintiffs the full amount owed to them and therefore had, through Defendant

Ellis and later Forage, repeatedly lied to them in monthly statements about what payments had

been received from various rural hospitals and thus were understating what MMP owed Plaintiffs.

2.    To begin with, Defendants assume the truth of Palmer's deposition testimony given on March 6, 2023, at which he recanted all of the above quoted statements made in his declaration. Yet at his deposition he admitted that he "signed the declaration under penalties of perjury," and that "if it was false and knowingly false, you [Palmer] could be charged with the criminal offense of perjury." He also admitted that he received a draft from attorney Kelly Dawson and sent it back after having corrected a spelling error and that he signed the corrected original. *See* Palmer Dep., Dkt. No 43-1, p. 52. Specifically, at that deposition, Palmer stated:

> Q. Okay. And now that you've read this declaration, it says that he was in on all this fraudulent accounting and skimming; right?
>
> A. Well, that's what it says. That -- that's not -- not what I said.
>
> Q. Right. Would you care to apologize to Mr. Nichols for having signed –
>
> A. For having signed it?
>
> A.  Sorry. Yes.
>
> Q. Okay. And as far as the judge or jury that might be hearing this case, what would you say they should do in terms of relying on the truth and veracity of this declaration you signed?
>
> A. I'd say not to rely on it. Discard it.

*See* Palmer Deposition Transcript at Dkt. No 43-1, pp. 73 to 74.

3.    However, there is no way to tell at this point which version of Palmer's statements (those in his sworn declaration or his later-given deposition) are true, and which are false. For the reasons cited in Plaintiffs' Opposition to Defendants' Motion for Sanctions, both versions of Mr. Palmer's statements are admissible under the Federal Rules of Evidence and the inconsistency between them presents a question of fact for the jury as to which is true. Both

versions are sworn under oath. All that can be determined at this point is that one of the versions of events given by Mr. Palmer is false.

4.      I can state categorically that as of the time that the declaration statements were included in the Original Complaint and thereafter in the First Amended Complaint,  I had no indication whatsoever that Mr. Palmer was going to later disavow them. I still have no basis for knowing that his later disavowal of them is true.

5.      In addition, the statements in his declaration (dated September 6, 2022), sent to me by Attorney Kelly Dawson, the lawyer who had reviewed the declaration with Palmer, were certainly plausible given that, as the bookkeeper and tax preparer for MMP, Mr. Palmer had a basis for knowing what he stated in his declaration and, also given his profession, he should normally be counted on to be accurate given that he deals daily with tax documents that are carefully prepared to assure accuracy, rather than to be as wildly inaccurate as he claims when he recanted his declaration many months later during his deposition on March 6, 2024.

6.      The circumstances under which the earlier declaration was executed by Mr. Palmer also show why it was properly included and certainly not a Rule 11 violation. I received the Palmer Declaration from a pleading filed months earlier in a state case in which it had been submitted and was told by attorney Kelly Dawson that Mr. Palmer and he had reviewed the content of the declaration and, after making certain changes, Palmer had executed it. *See* Exhibit 2 to the Plaintiffs' Opposition to the Rule 11 Motion for Sanctions, the Declaration of Kelly Dawson ("Dawson Dec.") filed contemporaneously with this declaration. So, this declaration had been filed by an attorney in another case. Mr. Palmer had obviously read the declaration before the final version was executed by him. After it had been filed in that other case, Palmer did not recant it and it sat there until that case was dismissed for other reasons. See further below.

7.     Moreover, in light of his recantation at his deposition in this case, none of what Palmer states, under oath or not, should be reliably taken as true.

8.     There were also many corroborating circumstances bolstering the assertions sworn to by Palmer in his declaration. By way of background, I was retained in the fall of 2021 to represent Toth Enterprises II P.A. d/b/a Victory Medical and Family Care ("Toth"), now a Plaintiff herein, in relation to a dispute it had with Blue Cross Blue Shield which had been referred to arbitration. After I was so retained, and long before the filing of the Original Complaint herein which was on May 15, 2023, Dr. William Franklin, a Plaintiff herein, asked me to examine various other legal matters in which Toth and he were involved, and I studied the files relating to those matters.

9.     In doing so, I learned that Allied Lab Solutions, LLC ("Allied") and its investor members (which members are Plaintiffs herein) worked together for five years with MMP in a common venture to provide lab services to various small rural hospitals throughout Texas where those hospitals needed help in processing all the lab work that they otherwise did not have the resources to complete on their own. Blood testing is highly profitable:

> Blood testing is also highly profitable. It is in constant demand since, other than the common thermometer, it is the most frequently relied upon diagnostic tool of the medical profession for detection of medical conditions. As noted in *Profit Machine*: By providing a competitive offering, laboratory outreach programs can compete and win against large national and regional laboratories (such as Quest . . . ). Outreach brings material new revenues . . . ."

*The Profit Machine in the Hospital Basement,* Kathleen A. Murphy, PhD*,* at Introduction, and:

> You will be amazed at how many hospital-owned medical office buildings have exclusive contracts with Quest Diagnostics or Lab Corp. The hospital has given away the farm . . .

*Id.,* at p. 70.

10.     Specifically, Defendant MMP, along with Plaintiffs, Allied and another entity

6

named Allied Lab Solutions Management LLC (Allied Management), sought to compete with the nationwide labs Quest and Lab Corp. Plaintiffs, MMP and the others offered and then rendered substantial assistance in the collecting and processing of blood specimens for testing by the small rural hospitals and, in exchange, Allied and MMP were to receive 75% of the money collected by participating rural hospitals from the health insurance companies after the rural hospitals billed and had been paid by the health insurance companies for the lab work with which Plaintiffs and MMP had assisted. The rural hospitals kept 25% of those monies for themselves for the work they completed running the labs and then the other 75% was paid over to MMP, and MMP was entrusted to pay to Plaintiffs 55% of the monies received by MMP (which meant 40% of the monies received by the hospitals from the insurance carriers for the billings for the lab work involved) paying to each Plaintiff each month his or her percentage of membership in Allied.

11.    The above-described relationship was embodied in a Service Agreement which is annexed as Exhibit A to the Original and Amended Complaint. (Dkt. No. 1-2 and 14-1.)[1] I reviewed that Service Agreement between MMP and Allied Lab Solution Management, which stated the arrangements between them. Under that contract, MMP was to collect the payments from the rural hospitals. Payments were made on a monthly basis to MMP because health

---

[1]    This Service Agreement was actually signed by Allied Lab Services Management, LLC ("Allied Management") which was formed to act as a manager for Allied and to assist Allied in its operations in any way directed by Allied. This role is reflected in the Management Agreement of Allied which I reviewed before the Original Complaint in this case was filed. All of the lab service activities performed under this Agreement as described in the Original Complaint were performed by staff of Toth for Allied and all payments made to Plaintiffs as a result of those services were made by MMP to Allied, not to Allied Management, and Allied then paid their respective shares to its members, including the Plaintiffs herein. MMP sent to Plaintiffs each month a statement telling them what had been received by MMP from the rural hospitals and these statements are alleged to have been false understatements of the monies received.

insurance companies made monthly payments to the rural hospitals. Defendant Clay Ellis headed MMP and was responsible for paying the Plaintiffs their share of the monies due under the contract.  Ellis was to give the monies due to Allied through Allied's manager, Defendant Jean-Pierre Forage, or was supposed to do so, each month after the payments were received by MMP. I believed this given the terms of the above-referenced Service Agreement and also because, along with his or her monthly payments of the promised percentage, each Plaintiff was also provided by Ellis and later by Forage with a monthly statement specifying how much MMP had been paid that month by the rural hospitals and explaining how that amount had been used to calculate that member's percentage each month. Those figures were also summarized each year by MMP in a K1 given to each Plaintiff by MMP and Plaintiffs used those K1s to prepare their income tax returns.

12.     Before filing the Original Complaint in this case, I reviewed many of these monthly statements and K1s. Examples of them are annexed to this declaration as Exhibits A and B. I spoke at length and met with attorney James Clements who was acting at that time, in the summer of 2022, on behalf of Lewis Nichols. He confirmed that those statements had been sent to Plaintiffs.

13.     I also learned from review of these statements that this lab service program commenced in late 2016 and continued until April 2019 at which time MMP paid no more monies to Plaintiffs.

14.     While the program was in operation, I understand it was very successful, with Allied and MMP earning collectively over $29,000,000 from the fall of 2016 when it commenced until April 2019.  All of this was paid by the rural hospitals to MMP after the hospitals were paid by the health insurance companies for the lab work. I reviewed the records

which stated that their earnings were in fact those which MMP had stated in the monthly
statements described above, doing so before the Original Complaint was filed. These numbers
were also reflected in an MMP report provided by attorney Clements during our discussions in
June 2022.

15.    In May 2019, Plaintiffs were told by Defendants Forage and Ellis that MMP
stopped making any payments to the Plaintiffs because the insurance carriers were no longer
paying the rural hospitals for any submitted lab blood claims, and thus, they said, MMP was not
being paid by the rural hospitals and had nothing further to divide with Plaintiffs.

16.    Defendants, through Defendant Forage who was then acting as the manager of
Allied and Allied Management, also then caused the termination of Allied and Allied
Management. In terminating these LLCs, Forage stated on the applicable forms he submitted
under penalty of perjury to the Secretary of the State of Texas that these entities were being
voluntarily shut down. See Exhibit C hereto, where Forage tells the Secretary of State that: "[A]
voluntary decision to wind up the entity has been approved in the manner required by  the Texas
Business and Organizations Code."   In truth, the members of Allied (Plaintiffs herein) never in
fact agreed to shut down Allied. See the declarations of Plaintiffs collectively annexed as Exhibit
D hereto. For example, the declaration of one member, Dr. Shawn Agenbroad Elander, executed
on March 13, 2023, which I reviewed before filing the Original Complaint, states under oath as
follows:

> Sometime in early 2022, I was informed that ALS I had been terminated or
> dissolved by its then current manager, Jean Paul Forage. Thereafter and a majority
> of all the outstanding members by percentage interest of ALS I resolved (*see*
> Exhibit A hereto at page 1) as follows: Without the consent of shareholders, without
> knowledge of shareholders, and without written consent of approval from
> shareholders, the Manager terminated the operating agreement of Allied Lab
> Solutions, LLC. My signature appears on the attached resolution and was executed
> and notarized on February 18, 2022. Id., p. 3 1. We also resolved to remove the

then current manager, Jean Paul Forage, and in his place to install Mr. Kelly Dawson as interim manager.

All of Plaintiffs (the members of Allied) also swore that it was not true that they had authorized the shutdown of Allied Management (*Id.*) and I therefore concluded that Forage had made false statements to the contrary to the Texas Secretary of State.

17.    Because Allied had been closed down on false pretenses it was not able to seek any discovery of its books and records so that Toth and the other Plaintiffs could examine their financial records. For the time being, this being back in 2019, Plaintiffs accepted as true what Forage and Ellis had told them about the lab work no longer being reimbursed.

18.    However, again before this action was commenced, I learned from a very reliable source that Ellis and Forage had falsely stated (and sworn) that MMP had received no more payments after April 2019. Knox County Hospital (one of the rural hospitals referred to above) had in 2019 sued Blue Cross Blue Shield for failure to pay millions of dollars of claims Knox had submitted to Blue Cross for reimbursement for lab work that Knox claimed was due from Blue Cross under its health plan coverage for patients insured by Blue Cross and who had blood drawn and analyzed by Knox. That case was filed in state court and then removed to federal court and entitled *Knox County Hospital District v. Health Care Corporation, a Mutual Legal Reserve Company, d/b/a Blue Cross Blue Shield,* Civil Action No. 7:19-cv-00095, Northern District of Texas, Wichita Falls Division. I reviewed the online PACER docket and the pleadings filed therein. That case was referred to arbitration and discovery taken in that case showed that in fact, after Ellis and Forage had both stated that after April 2019 no more payments were made to MMP, millions of dollars had been paid by Knox to MMP, approximately 55% of which should have been turned over by MMP to Allied and the Plaintiffs under the Service Agreement. These further payments were shown in a declaration of Steven Kuehler, the CEO of Knox County

Hospital, one of the rural hospitals who was involved in the lab program. I reviewed that

declaration before filing the Original Complaint in this case. It is annexed as Exhibit E to the

Original Complaint (Dkt. No 1-6).

19.     Toth and Dr. Franklin then filed suit against Clay Ellis for these underpayments in

a Texas state court case entitled *Toth v. Ellis* (Travis County Cause No. D-1-GN-20-003469). I

was not involved in that filing but I did review the filings in that case prior to the Original

Complaint being filed in this case, including sworn statements of both Defendants Ellis and

Forage and the declaration of the CEO of Knox County Hospital. On December 21, 2020, Toth

took Ellis' deposition in that case and, under oath, Ellis categorically denied receiving any more

payments after April 2019 from any hospital which included Knox. *See* Exhibit D to the Original

Complaint (Dkt. No. 1-5), the Ellis deposition at pages 84 and 85:

> Q. [By Counsel for Victory Medical] And the last time LN Professional
> Management had any business for which it was paid would be in the spring of 2019;
> is that true?
>
> A. [By Defendant Ellis] That is correct.

20.     Before filing the Original Complaint in this case, I read the above referenced

Ellis' deposition in its entirety.  Thereafter, Defendant Forage also so stated in a sworn

statement:

> As part of my duties, I oversee the implementation of the Agreement and the
> disbursement of funds that would be received under that Agreement. *Since April
> 2019, there have not been any funds received from LN Professionals, LLC, nor any
> under its assumed name Medical Management Professionals.*
>                                     * * *
> There are no funds which were received which were not distributed.

*See* Exhibit D annex to the Original Complaint (emphasis added) at Dkt. No. 1-5. I also read this

statement before filing the Original Complaint in this case.

21.     However, to document his contrary assertion made in the *Knox County v. Blue*

*Cross* arbitration relating to these payments, Steven Kuehler, the CEO of Knox County Hospital, executed a declaration which was accompanied by a monthly statement for each separate month commencing at the end of 2018 and through 2021. *See* Exhibit E to the Original Complaint at Dkt. No. 1-6. Specifically at pages 33 through 48 of Exhibit E to the Original Complaint, show that from May 2019 through July 2020, millions of dollars had been paid by Knox to MMP for lab work done after April 2019.  That was completely at odds with what Defendants Ellis and Forage had repeatedly stated to Dr. William Franklin, and stated under oath as quoted above, which had been that from and after April 2019 nothing further had been paid by Knox Hospital to MMP.

22.    Moreover, the Knox CEO attached to his declaration checks showing each one of those payments. *See* Exhibit E to the Original Complaint commencing at page 49 through 97 at Dkt. No. 1-6. These are all checks payable by Knox to MMP for lab work. Before filing the Original Complaint in this case, I reviewed the checks just described each of which show a separate payment from Knox to MMP after April 2019. This seems clearly to show that Forage and Ellis had falsified their statements denying any such payments. Checks do not lie. I therefore concluded that Ellis and Forage had lied about receiving no more payments after April 2019 since there were checks showing millions of dollars of such payments. This also corroborated what Palmer had stated in his declaration.

23.    I determined that the best course was to contact counsel for MMP, tell him of Toth's concerns and seek to resolve the pending lawsuit by examining MMP's bank records so we could determine how much in fact they had been paid, if any, after April 2019. I thought the better approach to litigation was to try to verify by bank records what had actually been paid by the rural hospitals to MMP after April 2019 and thus the case may well be resolved.

24.     I thus contacted attorney Jim Clements of Austin in or around early August 2022. Mr. Clements was then acting as attorney for Defendant Lewis Nichols and MMP. I explained my concern. He then gave me a different explanation. He no longer asserted the explanation previously given by Forage and Ellis, *i.e.*, that no more money had been paid by the rural hospitals to MMP after April 2019.  Instead, and now confronted by me with the Kuehler Declaration and the checks showing that substantial payments had in fact been made after April 2019, Attorney Clements stated that while money had been paid to MMP by the rural hospitals, none of it was owed to Plaintiffs because it was applied to costs of MMP previously incurred over the three years the program was running. He called these expenses "clawbacks." I looked at the prior accountings from MMP to Plaintiffs and checked with Dr. Franklin and could not find any reference to clawbacks. While MMP had been authorized under the Agreement (See Dkt. No. 1-2, Exhibit A to the Original Complaint) to deduct certain expenses, it appeared to me from examining the monthly statements given by MMP to Plaintiffs that the ones that were itemized had already been deducted and that no further expenses had been incurred during the time the program was running.

25.     Dr. Franklin likewise had not heard of any such clawbacks. He told me that he had previously asked for the bank records as had his attorney, Mark Collmer of Houston, and Defendants had refused to give those to him for review. Instead, Ellis stated and then repeated in his deposition that the records had been "lost" but that no further payment had been made after April 2019. He mentioned nothing about "clawbacks" which were not raised until Kuehler showed us the checks thus proving payments were made which had been denied by Defendants Ellis and Forage.

26.     To seek clarification, I emailed Attorney  Clements on August 25, 2022, again

before the Original Complaint in this case had been filed, as follows:

> As to these claims, we have spent a great deal of time reviewing available records to determine whether there is any basis for the large clawback claims being asserted by MMP. * * * I have now reviewed the checks issued by Knox to MMP on and after May, 2019 which is when the last payment was made from MMP to Allied. After that payment, fully $2,425,724.67 dollars was paid by Knox to MMP in separate payments commencing in June, 2019 and continuing through the summer on 2020. See the attached spreadsheet and the amounts highlighted in red. These are the sums reflected by the checks I have seen payable by Knox to MMP and the dates on the spreadsheet are the dates on each of the checks. Therefore these amounts cannot be the subject of argument. Yet nothing was paid from any of those payments by MMP to Allied -- not a cent.

> I have read a transcript of Clay's testimony in which there was no mention of clawbacks. Instead, Clay testified that after the April 2019 payment, MMP received *no money* from Knox. This is quite troubling. Now that there is money, at least the money that Blue Cross paid Knox in the recent settlement, all of a sudden there is this clawback claim which is supposed to net out that Allied owes MMP over $3,000,000 in costs over and above that money that was paid to MMP (for division between Allied and MMP under the Services Agreement) from the Blue Cross/Knox settlement agreement. That is a highly suspect claim. For it to be accurate the "clawback" costs incurred by MMP must have exceeded over $3,000,000 dollars over and above the following two sums of money: Allied's percentage of the excess of $2,425,724.67 paid to MMP by Knox after April, 2019 (per the attached spread sheet) and Allied's share of the approximate $7,000,000 that is the amount of the Knox Blue Cross settlement after Knox deducted its 25% and its costs. That, Jim, is one hell of a clawback. Billy will not accept that computation without an audit of the bank records of MMP to determine exactly how much it paid in legitimate costs. Frankly, the way this has been handled and explained by Clay, it seems that the entire three years needs to be audited or at least spot checked and all the costs documented.

> ****

> We are willing to have this done in the context of a binding arbitration where the simple issue would be: How much money did MMP receive from Knox and Glen Rose, how much money did MMP pay for legitimate costs properly deducted from those Knox and Glen Rose payments and therefore how much is Allied owed.

*See* Exhibit E attached hereto.

27.    In response, neither MMP, its counsel nor Mr. Nichols, Mr. Ellis or Mr. Forage

would agree to any audit even though they could easily have obtained copies of the relevant bank

records from their bank (if in fact they had been lost as claimed) and these records would have shown what MMP had deposited into its bank accounts and from whom and when, and what it had paid out in costs. My reasoning was that since bank records would have shown the truth about the monies going in and coming out of MMP bank accounts, they surely would have shown us the bank records if they corroborated their story. Without that showing, it seemed clear that CEO Kuehler from Knox and the checks he provided were the truth of the matter. My request to examine the bank records of MMP was refused. This also was consistent with MMP and the other Defendants having tried to hide what had been paid and thus also was consistent with the fraud described by Palmer in his declaration.

28.     I was also furnished opposition papers to a motion for summary judgment in the state case and those are annexed to the Affidavit of Mark Collmer filed contemporaneously with this declaration. They also corroborated Larry Palmer's statements to the effect that Defendants had skimmed from Plaintiffs the money due to Plaintiffs and further specifically bolstered CEO Kuehler's assertions that a great deal of money had been paid to MMP after April 2019 despite the denials of Defendant Forage and Ellis.

29.     Before the Original Complaint was filed in this case, I also was provided a copy of the Palmer Declaration.

30.     Its assertions about skimming were included by me in the Original Complaint because:

     a)   Palmer was a bookkeeper and tax preparer for MMP and thus was in a position to know about any underpayments.

     b)   The declaration was detailed.

     c)   Palmer and an attorney, Kelly Dawson, had discussed the facts and then reviewed

a draft of that declaration and, after Palmer made changes to that draft before he executed the final version of it, he signed it and returned it to Attorney Dawson on September 6, 2022.

d)   Before that declaration was quoted in any of the pleadings in this case, it had been filed in the above-referenced state case in September 2022, as part of an opposition which Toth and Franklin had filed to a summary judgment motion Ellis had filed in the state case. (*See* Exhibit E to the Dawson Dec.) While Ellis and his attorneys thereafter filed an objection to the Palmer Declaration (Collmer Dec. Exhibit B) they did not deny any of the assertions in the Palmer Declaration nor submit any recantation by Palmer of what he had stated in that declaration. They only objected to the timeliness of the disclosure and certain other procedural objections. (*Id.*) The Palmer Declaration was later filed against Defendants in yet another state case (*See* Collmer Dec.) entitled *Knox County Hospital District v. Toth Enterprises II, P.A., et. al.*  Cause No. 10301 (in the District Court of Knox County, 50th Judicial District). In their response, no Defendant asserted that the Palmer declaration was false, only that it was "hearsay and conclusory." (*See* Exhibit C to the Collmer Dec.). To date, I have not seen any sworn statement or testimony by Ellis, Forage or Nichols asserting under oath that the content of the Palmer Declaration is false.

e)   Also, in provably false statements (quoted above) that both Defendants Ellis and Forage had made under oath, they both falsely stated that no more money had been received by MMP after April 2019 from any of the participating rural hospitals and thus there was nothing, they claimed, to have been divided with Plaintiffs which was contradicted by the cancelled checks showing millions of dollars of such payments from Knox County Hospital to MMP after April 2019 (attached to Kuehler Declaration at

Exhibit E, Dkt. No. 1-6)  Thereafter when confronted with these checks, Forage and Ellis changed their story to admitting that MMP had been paid but instead claimed that no more money was due Plaintiffs because of "clawbacks" of expenses they had incurred over the last 4 years, even though they had not mentioned those at an earlier in time.

    f)   Forage as manager of Allied, Plaintiffs' LLC, closed it down in the late fall of 2020 and later told a state court as follows:

> On or about October 7, 2020, I terminated ALS I . . . .Before this termination I notified all members of the intent to terminate . . . The reason for the termination was that ALS Management had no ongoing revenue. Thus, ALS I was no longer receiving distributions from ALS management.

*See* Dkt. No. 1-4 at ¶7, the Declaration of J.P. Forage previously filed state court. Yet this was a false statement because he had notified none of the members of Allied that he was closing it down. *See* Exhibit D hereto, the declarations of all the Allied members denying that any of them had been contacted about the closure.). By making false statements under oath to the Secretary of State that Plaintiffs, its members, had consented to that closure when they had not, deprived Plaintiffs of the existence of that LLC to seek to discover documents showing the actual finances of MMP. Forage thereafter refused to reopen it when requested by Plaintiffs' counsel to do so.

    g)   Defendants refused to show Plaintiffs' counsel any bank records that could prove what really had actually been paid to MMP by the rural hospitals and disbursed.

    h)   Millions of dollars had been paid to MMP after April 2019 despite the denials of Defendant Forage and Ellis.

    31.   I take this opportunity to respond to various other matters stated in Defendants' motion papers:

    a)   Nobody on our side of this litigation ever tried to quash any subpoena for

Palmer's deposition. Indeed, in one of the state cases attorney Mark Collmer actually sought for the local constable to serve a subpoena on Palmer to testify at the trial scheduled for May 2023. That subpoena was issued in the state case where Forage and others had sued Franklin for allegedly fraudulently attempting to reopen Allied. *See Forage, et. al. . v. Dawson, et al*., Cause No. D-1-GN-22-006595 (in the District Court of Travis County,  419th Judicial District). As the defense for Franklin in that case, we wanted to show through Palmer's testimony that we had reason to believe that Allied was shut down by Forage and that we were attempting to reopen it so that we could seek records of the actual payments sent by Knox Hospital and the other hospitals to MMP and that we did not have the fraudulent purpose alleged by Forage in that state case. His testimony would give a reason why Dr. Franklin  had attempted to reopen Allied. Therefore, nobody on our side of that litigation would have attempted to quash a subpoena we had served to compel his trial testimony.

b)   Nor we did we try to delay the Palmer deposition in the instant case for any improper reason, rather, we proposed rescheduling to a date after document production was completed by Defendants and by third-parties served with subpoenas to avoid the possibility of having to continue Palmer's deposition on a second date to question him about more documents.

c)   I never spoke with Larry Palmer before filing the Original Complaint. As his deposition indicates, however, I did try to contact him about his declaration by email but he never responded.

d)   While it is true that there was a Bar issue pending involving attorney Kelly Dawson, about which I learned in relation to the above-referenced litigation in Travis

County, whatever the outcome of that Bar complaint, it had nothing to do with the Palmer Declaration.

I declare under penalty of perjury that the foregoing is true and correct to the best of my memory.

Executed this 18th day of April 2024 in Boston, Massachusetts.

*/s/ John J.E. Markham, II*
John J. E. Markham, II

**EXHIBIT A - 1**

| | |
|---|---|
| **From:** | Clay Ellis <clayknowshrt@gmail.com> |
| **Sent:** | Saturday, December 10, 2016 10:45 AM |
| **To:** | Michelle Holle <mholle@victorymed.com> |
| **Subject:** | Fwd: Dist Reports |
| **Attach:** | Allied I November Distribution.pdf; Allied II Nov Distribution.pdf |

---------- Forwarded message ----------
From: **Larry Palmer** <Larry@medicalmanagement101.com>
Date: Sat, Dec 10, 2016 at 9:43 AM
Subject: Dist Reports
To: "Clay Ellis (clayknowshrt@gmail.com)" <clayknowshrt@gmail.com>

--
**Clay Ellis**
(855) MAX-TEST
Office: 512-551-3843
Fax: 562-502-6287
clay@hrtmaxhealth.com
www.hrtmaxhealth.com
*feel better ◆ live better*

*The information contained in this transmission may contain privileged and confidential information, including patient information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**EXHIBIT A - 2**

# MMP Distribution Report                 Allied I

## November 2016 Collection Activity

| Activity | | |
|---|---|---|
| Glen Rose | | |
| Collected Cases | | 130 |
| Average Collection/Case | | 3,166.72 |
| SMH | | |
| Collected Cases | | 99 |
| Average Collection/Case | | 1,644.17 |

| Gross Income | | |
|---|---|---|
| SMH | | 162,773.07 |
| Glen Rose | | 411,673.21 |
| Total | | 574,446.28 |

| Expenses | | |
|---|---|---|
| SMH Lab Costs | | 35,756.82 |
| Glen Rose Lab Costs/Case | | 57,300.10 |
| MMP Fulfillment Costs/Case | | 13,023.23 |
| | | |
| Net Income | | 468,366.13 |
| | | |
| Distributable Income | 40.00% | 187,346.45 |
| Allied Management Fee  1% | | 1,873.46 |
| Net Income | | 185,472.99 |
| Per Unit Distribution | | 1,854.73 |

**EXHIBIT A - 3**

| | |
|---|---|
| **From:** | Clay Ellis <clayknowshrt@gmail.com> |
| **Sent:** | Saturday, June 17, 2017 1:36 PM |
| **To:** | Michelle Holle <mholle@victorymed.com> |
| **Subject:** | Fwd: Allied I May Dist |
| **Attach:** | May Allied I Dist V2.pdf |

Here you go

--
**Clay Ellis**
(855) MAX-TEST
Office: 512-551-3843
Fax: 512-290-9116
clayknowshrt@gmail.com
www.hrtmaxhealth.com
*feel better◆live better*



*The information contained in this transmission may contain privileged and confidential information, including patient information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**EXHIBIT A - 4**

Allied I

May
# Collection Activity

| Activity | |
|---|---|
| Totals | |
| Total New Cases received by billing dept. | 403 |
| Collected Cases | 423 |
| Average Collection/Case | 2,286.33 |
| Average Billed amount/case | 6,225.28 |
| Patient Responsibility/case | 456.27 |

| Gross Income | |
|---|---|
| Total | 967,116.19 |

| Expenses | |
|---|---|
| Lab Costs | 194,139.19 |
| Net Income Before Distribution | 772,977.00 |
| **Gross Distributable Income @ 40%** | 309,190.80 |
| Management Fee @ 1% | 3,091.91 |
| Net Income | 306,098.89 |
| Per Unit Distribution | 3,060.99 |

**CONFIDENTIAL**     **EXHIBIT B - 1** 651113

| Schedule K-1 (Form 1065) | **2016** | |
|---|---|---|

Department of the Treasury
Internal Revenue Service

For calendar year 2016, or tax
year beginning _____ , 2016
ending _____ , 20

**Partner's Share of Income, Deductions, Credits, etc.**

▶ See page 2 of form and separate instructions.

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

**Part III**   **Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 1,465 | 15 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments 200,107 | | |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | |
| | | 19 | Distributions |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | | |
| | | 20 | Other information |
| 14 | Self-employment earnings (loss) A 201,572 C 208,612 | | |

**Part I**   **Information About the Partnership**

**A** Partnership's employer identification number

**B** Partnership's name, address, city, state, and ZIP code

Allied Lab Solutions I
1841 S Lakeline Blvd   Ste 101-140
Cedar Park, TX 78613

**C** IRS Center where partnership filed return
Ogden

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II**   **Information About the Partner**

**E** Partner's identifying number

**F** Partner's name, address, city, state, and ZIP code

TOTH ENTERPRISES
4303 VICTORY DR
Austin, TX 78704

**G** ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?   DISREGARDED

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 82.0000000 % | 82.0000000 % |
| Loss | 82.0000000 % | 82.0000000 % |
| Capital | 82.0000000 % | 82.0000000 % |

**K** Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | |

**L** Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | |
| Capital contributed during the year | $ | 20,500 |
| Current year increase (decrease) | $ | 1,465 |
| Withdrawals & distributions | $ ( | ) |
| Ending capital account | $ | 21,965 |

☐ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**2017**

| | | |
|---|---|---|
| Final K-1 | Amended K-1 | OMB No. 1545-0123 |

For calendar year 2017, or tax year

beginning _____, 2017   ending _____, 20 ____

**Partner's Share of Income, Deductions, Credits, etc.**

▶ See page 2 of form and separate instructions.

| **Part III** | **Partner's Share of Current Year Income, Deductions, Credits, and Other Items** |
|---|---|

| **1** Ordinary business income (loss) | **15** Credits |
|---|---|
| 3,577 | |

**Part I**   **Information About the Partnership**

**A**   Partnership's employer identification number
[redacted]

**B**   Partnership's name, address, city, state, and ZIP code
Allied Lab Solutions I

1841 S Lakeline Blvd  Ste 101-140
Cedar Park, TX 78613

**C**   IRS Center where partnership filed return
efile

**D**   ☐ Check if this is a publicly traded partnership (PTP)

**2** Net rental real estate income (loss)

**3** Other net rental income (loss)

**4** Guaranteed payments
3,080,390

**5** Interest income

**6a** Ordinary dividends

**6b** Qualified dividends

**7** Royalties

**8** Net short-term capital gain (loss)

**9a** Net long-term capital gain (loss)

**9b** Collectibles (28%) gain (loss)

**9c** Unrecaptured section 1250 gain

**10** Net section 1231 gain (loss)

**11** Other income (loss)

**16** Foreign transactions

**17** Alternative minimum tax (AMT) items

**18** Tax-exempt income and nondeductible expenses

**Part II**   **Information About the Partner**

**E**   Partner's identifying number
[redacted]

**F**   Partner's name, address, city, state, and ZIP code
TOTH ENTERPRISES
4303 VICTORY DR
Austin, TX 78704

**G**   ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H**   ☒ Domestic partner    ☐ Foreign partner

**I1**   What type of entity is this partner?   DISREGARDED

**I2**   If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J**   Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 82.0000000 % | 82.0000000 % |
| Loss | 82.0000000 % | 82.0000000 % |
| Capital | 82.0000000 % | 82.0000000 % |

**K**   Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ |
| Recourse | $ |

**L**   Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ 21,965 |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ 3,577 |
| Withdrawals & distributions | $ ( ) |
| Ending capital account | $ 25,542 |

☐ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M**   Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

**12** Section 179 deduction

**13** Other deductions

**14** Self-employment earnings (loss)
A   3,083,967
C   3,082,690

**19** Distributions

**20** Other information

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.    www.irs.gov/Form1065     Schedule K-1 (Form 1065) 2017
EEA
**CONFIDENTIAL**    **PLT003368**

**CONFIDENTIAL**                                               **EXHIBIT B - 3**

| | |
|---|---|
| Schedule K-1 (Form 1065) | **2018** |

□ Final K-1   □ Amended K-1            OMB No. 1545-0123

Department of the Treasury
Internal Revenue Service

For calendar year 2018, or tax year

beginning [ ]   ending [ ]

**Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

**Partner's Share of Income, Deductions, Credits, etc.** ▶ See back of form and separate instructions.

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 2,546,593 | 15 | Credits |
| 2 | Net rental real estate income (loss) | | |

**Part I   Information About the Partnership**

A  Partnership's employer identification number
[ ████ ]

| | | | |
|---|---|---|---|
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | | |

B  Partnership's name, address, city, state, and ZIP code
**Allied Lab Solutions I**

2121 Lohmans Crossing Rd Ste504-410
Lakeway          TX 78734

| | | | |
|---|---|---|---|
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 6c | Dividend equivalents | | |

C  IRS Center where partnership filed return
e-File

D  □  Check if this is a publicly traded partnership (PTP)

| | | | |
|---|---|---|---|
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |

**Part II   Information About the Partner**

E  Partner's identifying number
[ ████ ]

| | | | |
|---|---|---|---|
| 9a | Net long-term capital gain (loss) | | |
| 9b | Collectibles (28%) gain (loss) | | |

F  Partner's name, address, city, state, and ZIP code
**Toth Enterprises II PA**

4303 Victory Dr
Austin          TX 78704

| | | | |
|---|---|---|---|
| 9c | Unrecaptured section 1250 gain | 18 | Tax-exempt income and nondeductible expenses |
| 10 | Net section 1231 gain (loss) | | |

G  □ General partner or LLC member-manager   ☒ Limited partner or other LLC member

H  ☒ Domestic partner   □ Foreign partner

I1  What type of entity is this partner?  **Disregarded Entity**

I2  If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here  □

| | | | |
|---|---|---|---|
| 11 | Other income (loss) | | |
| | | 19 | Distributions |
| | | A | 2,551,360 |

J  Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 82.000000 % | 82.000000 % |
| Loss | 82.000000 % | 82.000000 % |
| Capital | 82.000000 % | 82.000000 % |

| | | | |
|---|---|---|---|
| 12 | Section 179 deduction | 20 | Other information |
| 13 | Other deductions | Z* | 2,546,593 |

K  Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ | $ |
| Qualified nonrecourse financing | $ | $ |
| Recourse | $ | $ |

| | | | |
|---|---|---|---|
| | | AH* | STMT |
| 14 | Self-employment earnings (loss) | | |

L  Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ 25,542 |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ 2,546,593 |
| Withdrawals & distributions | $ ( 2,551,360 ) |
| Ending capital account | $ 20,775 |

□ Tax basis  □ GAAP  □ Section 704(b) book
□ Other (explain)

M  Did the partner contribute property with a built-in gain or loss?
□ Yes  ☒ No
If "Yes," attach statement (see instructions)

*See attached statement for additional information.

**CONFIDENTIAL**          **PLT003375**

CONFIDENTIAL

**EXHIBIT B - 4**

Partner# 1

| Schedule K-1 | Analysis of Partner's K-1, Current Year Increase (Decrease) Worksheet | 2018 |
|---|---|---|
| | For calendar year 2018, or tax year beginning _____ and ending _____ | |

| Partnership Name | Employer Identification Number |
|---|---|
| Allied Lab Solutions I | ▓▓▓▓▓▓▓ |

| Partner's Name | Taxpayer Identification Number |
|---|---|
| Toth Enterprises II PA | ▓▓▓▓▓▓▓ |

Items included in Current Year Increase (Decrease):

**Schedule K Additions:**
    Ordinary Income/Loss                                                                  2,546,593

                                         Subtotal             2,546,593

Total per Schedule K 1, Current Year Increase (Decrease)       2,546,593

CONFIDENTIAL

1 of 1

ALLIED1 02/06/2020 1:0:0 PM **CONFIDENTIAL**  **EXHIBIT B - 5**

**Partner# 1**

651119

| | |
|---|---|
| **Schedule K-1**<br>**(Form 1065)**<br>Department of the Treasury<br>Internal Revenue Service | **2019** |

For calendar year 2019, or tax year

beginning _____ ending _____

**Partner's Share of Income, Deductions, Credits, etc.** ➤ See back of form and separate instructions.

| [X] Final K-1 | [ ] Amended K-1 | OMB No. 1545-0123 |
|---|---|---|

**Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

### Part I   Information About the Partnership

**A** Partnership's employer identification number

■■■■■■

**B** Partnership's name, address, city, state, and ZIP code

**Allied Lab Solutions I**

**2121 Lohmans Crossing Rd Ste504-410**
**Lakeway            TX 78734**

**C** IRS Center where partnership filed return ▶

**e-file**

**D** [ ] Check if this is a publicly traded partnership (PTP)

### Part II   Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See instr.)

■■■■■■

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.

**Toth Enterprises II PA**

**4303 Victory Dr**
**Austin            TX 78704**

**G** [ ] General partner or LLC member-manager   [X] Limited partner or other LLC member

**H1** [X] Domestic partner   [ ] Foreign partner

**H2** [X] If the partner is a disregarded entity (DE), enter the partner's:

TIN ■■■■■■
Name   **William Franklin MD**

**I1** What type of entity is this partner?   **Individual**

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here [ ]

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 82.000000 % | 82.000000 % |
| Loss | 82.000000 % | 82.000000 % |
| Capital | 82.000000 % | 82.000000 % |

Check if decrease is due to sale or exchange of partnership interest . . . . . . . . . . . . . . . . [ ]

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . . . . . $ | | $ |
| Qualified nonrecourse financing $ | | $ |
| Recourse . . . . . . . $ | | $ |

[ ] Check this box if Item K includes liability amounts from lower tier partnerships.

**L**   Partner's Capital Account Analysis

| | |
|---|---|
| Beginning capital account . . . . . . . . . . . . . . . . . . . . $ | 20,775 |
| Capital contributed during the year . . . . . . . . . . . . . . $ | |
| Current year net income (loss) . . . . . . . . . . . . . . . . $ | 1,971,021 |
| Other increase (decrease) (attach explanation) **STMT** $ | -8,429 |
| Withdrawals & distributions . . . . . . . . . . . . . . . . . $ ( | 1,983,367 ) |
| Ending capital account . . . . . . . . . . . . . . . . . . . . $ | 0 |

**M** Did the partner contribute property with a built-in gain or loss?

[ ] Yes   [X] No   If "Yes," attach statement. See instructions.

**N**   Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)

Beginning . . . . . . . . . . . . . . . . . . . . . . . . $ _____
Ending . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss)<br>**1,971,021** | 15 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4a | Guaranteed payments for services | | |
| 4b | Guaranteed payments for capital | | |
| 4c | Total guaranteed payments | | |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | 17 | Alternative minimum tax (AMT) items |
| 6c | Dividend equivalents | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 9a | Net long-term capital gain (loss) | | |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | 19 | Distributions |
| 11 | Other income (loss) | A | **1,983,367** |
| 12 | Section 179 deduction | 20 | Other information |
| 13 | Other deductions | Z* | **STMT** |
| | | AH* | **STMT** |
| 14 | Self-employment earnings (loss) | | |
| 21 | More than one activity for at-risk purposes* | | |
| 22 | More than one activity for passive activity purposes* | | |

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see instructions for Form 1065.   www.irs.gov/Form1065   Schedule K-1 (Form 1065) 2019
DAA

**EXHIBIT C - 1**



Form 651
(Revised 05/11)
Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
Filing Fee: $40

### Certificate of Termination of a Domestic Entity

This space reserved for office use.

**F I L E D**
In the Office of the
Secretary of State of Texas

**OCT 0 7 2020**

**Corporations Section**

## Entity Information

1. The name of the domestic entity is: __ALLIED LAB SOLUTIONS LLC__

2. The entity is organized as a __LIMITED PARTNERSHIP__ under the laws of Texas.
*e.g., for-profit corporation, limited partnership, etc.*

3. The date of formation of the entity is: __08/15/2016__
mm/dd/yyyy

4. The file number issued to the entity by the secretary of state is: 0802520728

## Governing Persons

5. The names and addresses of each of the entity's governing persons are: (see Item 5 instructions)

| GOVERNING PERSON 1 | | | | |
|---|---|---|---|---|
| Name: **J P FORAGE** | | | | |
| Address: 2121 LOHMAN'S CROSSING RD STE 50 | LAKEWAY | TX | USA | 78734 |
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

| GOVERNING PERSON 2 | | | | |
|---|---|---|---|---|
| Name: | | | | |
| Address: | | | | |
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

| GOVERNING PERSON 3 | | | | |
|---|---|---|---|---|
| Name: | | | | |
| Address: | | | | |
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

| GOVERNING PERSON 4 | | | | |
|---|---|---|---|---|
| Name: | | | | |
| Address: | | | | |
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

**RECEIVED**

**OCT 0 7 2020**

**Secretary of State**

Form 651

4

**PLT00460**

**EXHIBIT C - 2**

## Event Requiring Winding Up
*(See Item 6 instructions.)*

6. The nature of the event requiring winding up is set forth below:     (You must select either A, B, C, D, or E.)

☑ **A.**  A voluntary decision to wind up the entity has been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

☐ **B.**  The period of duration specified in the governing documents of the entity has expired.

☐ **C.**  The occurrence of an event specified in the governing documents of the entity that requires the winding up, dissolution, or termination of the entity

☐ **D.**  The occurrence of an event specified in the Texas Business Organizations Code that requires the winding up, dissolution, or termination of the entity

**OR**

☐ **E.**  A court decree requiring the winding up, dissolution, or termination of the entity has been rendered under the provisions of the Texas Business Organizations Code or other law.

## Completion of Winding Up

7. The filing entity has complied with the provisions of the Texas Business Organizations Code governing its winding up.

## Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____
mm/dd/yyyy

C. ☐ This document takes effect upon the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: _____
mm/dd/yyyy

The following event or fact will cause the document to take effect in the manner described below:

## Tax Certificate
*(Required)*

☑ Attached hereto is a certificate from the comptroller of public accounts that all taxes under title 2, Tax Code, have been paid.

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: 10/4/2020

By: **ALLIED LAB SOLUTIONS LLC**
Name of entity (see Execution instructions)

_____
Signature of authorized individual (see Execution instructions)

**VP FORAGE MD**
Printed or typed name of authorized individual

Form 651                                    5                                    **PLT00461**

**EXHIBIT C - 3**



## TEXAS COMPTROLLER OF PUBLIC ACCOUNTS

Comptroller.Texas.Gov

September 22, 2020

ALLIED LAB SOLUTIONS LLC
2121 LOHMANS CROSSING RD STE 504 C/O 410
LAKEWAY TX 78734-5288

## Certificate of Account Status

THE STATE OF TEXAS
COUNTY OF TRAVIS

I, Glenn Hegar, Comptroller of Public Accounts of the State of Texas, DO HEREBY
CERTIFY that according to the records of this office

### ALLIED LAB SOLUTIONS LLC

has filed all required reports for taxes administered by the Comptroller
under Title 2, Tax Code, and taxes reported due on those reports have been
paid. This certificate must be filed with the Texas Secretary of State to
legally end the entity's existence in Texas. This certificate is valid
through December 31, 2020.

GIVEN UNDER MY HAND AND
SEAL OF OFFICE in the City of
Austin, this 22nd day of
September, 2020 A.D.

Glenn Hegar
Texas Comptroller

Taxpayer number: 32061301498
File number: 0802520728

NOTE: Failure by registered Texas entities to legally end existence with the Texas Secretary of State on or before the expiration of this
certificate will result in additional franchise tax responsibilities. Texas entities not registered with the Texas Secretary of State and
all out-of-state entities are responsible for franchise tax through the last date of business in this state.

**PLT00462**

Form 05-305 (Rev.1-15/17)

| | | |
|---|---|---|
| **Form 651**<br>**(Revised 05/11)**<br>Submit in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>**Filing Fee: $40** | <br>**Certificate of Termination**<br>**of a**<br>**Domestic Entity** | This space reserved for office use.<br><br>**F I L E D**<br>**In the Office of the**<br>**Secretary of State of Texas**<br><br>SEP 0 8 2020<br><br>**Corporations Section** |

## Entity Information

1. The name of the domestic entity is:   ALLIED LAB SOLUTIONS MGMT LLC

2. The entity is organized as a   LIMITED LICENSED CORPORATION   under the laws of Texas.
   *e.g., for-profit corporation, limited partnership, etc.*

3. The date of formation of the entity is:   07/11/2016
   *mm/dd/yyyy*

4. The file number issued to the entity by the secretary of state is:   0802495975

## Governing Persons

5. The names and addresses of each of the entity's governing persons are: (see Item 5 instructions)

| **GOVERNING PERSON 1** | | | | |
|---|---|---|---|---|
| Name: | J P FORAGE | | | |
| Address: | 2121 LOHMAN'S CROSSING RD | LAKEWAY | TX | 78734 |
| | *Street or Mailing Address* | *City* | *State*   *Country* | *Zip Code* |

| **GOVERNING PERSON 2** | | | | |
|---|---|---|---|---|
| Name: | | | | |
| Address: | | | | |
| | *Street or Mailing Address* | *City* | *State*   *Country* | *Zip Code* |

| **GOVERNING PERSON 3** | | | | |
|---|---|---|---|---|
| Name: | | | | |
| Address: | | | | |
| | *Street or Mailing Address* | *City* | *State*   *Country* | *Zip Code* |

| **GOVERNING PERSON 4** | | | | |
|---|---|---|---|---|
| Name: | | | | |
| Address: | | | | |
| | *Street or Mailing Address* | *City* | *State*   *Country* | *Zip Code* |

**EXHIBIT C - 5**

## Event Requiring Winding Up
(See Item 6 instructions.)

6. The nature of the event requiring winding up is set forth below:     **(You must select either A, B, C, D, or E.)**

☑ **A.**     A voluntary decision to wind up the entity has been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

☐ **B.**     The period of duration specified in the governing documents of the entity has expired.

☐ **C.**     The occurrence of an event specified in the governing documents of the entity that requires the winding up, dissolution, or termination of the entity

☐ **D.**     The occurrence of an event specified in the Texas Business Organizations Code that requires the winding up, dissolution, or termination of the entity

**OR**

☐ **E.**     A court decree requiring the winding up, dissolution, or termination of the entity has been rendered under the provisions of the Texas Business Organizations Code or other law.

## Completion of Winding Up

7. The filing entity has complied with the provisions of the Texas Business Organizations Code governing its winding up.

## Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____
mm/dd/yyyy

C. ☐ This document takes effect upon the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: _____
mm/dd/yyyy

The following event or fact will cause the document to take effect in the manner described below:

```


```

## Tax Certificate
*(Required)*

☑ Attached hereto is a certificate from the comptroller of public accounts that all taxes under title 2, Tax Code, have been paid.

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: _9/3/2020_____        By: ALLIED LAB SOLUTIONS MGMT LLC
                                   _____
                                   Name of entity (see Execution instructions)

                                   _____
                                   Signature of authorized individual (see Execution instructions)

                                   J/P FORAGE MD
                                   _____
                                   Printed or typed name of authorized individual



# TEXAS COMPTROLLER OF PUBLIC ACCOUNTS

**Comptroller.Texas.Gov**

August 25, 2020

ALLIED LAB SOLUTIONS MGMT LLC
2121 LOHMANS CROSSING RD STE 504410
LAKEWAY TX 78734-5217

A

# Certificate of Account Status

THE STATE OF TEXAS
COUNTY OF TRAVIS

I, Glenn Hegar, Comptroller of Public Accounts of the State of Texas, DO HEREBY
CERTIFY that according to the current records of this office

### ALLIED LAB SOLUTIONS MGMT LLC

has filed all required reports for taxes administered by the Comptroller
under Title 2, Tax Code, and taxes reported due on those reports have been
paid. **This certificate must be filed with the Texas Secretary of State to
legally end the entity's existence in Texas.   This certificate is valid
through December 31, 2020.**

GIVEN UNDER MY HAND AND
SEAL OF OFFICE in the City of
Austin, this 25th day of
August, 2020 A.D.

Glenn Hegar
Texas Comptroller

Taxpayer number: 32060995209
File number:  0802495975

NOTE:  Failure by registered Texas entities to legally end existence with the Texas Secretary of State on or before the expiration of this
certificate, will result in additional franchise tax responsibilities. Texas entities not registered with the Texas Secretary of State and
all out-of-state entities are responsible for franchise tax through the last date of business in this state.

Form 05-305 (Rev. 1-15/17)

**EXHIBIT D - 1**

CAUSE NO. D-1-GN-22-006595



| | | |
|---|---|---|
| JEAN-PIERRE FORAGE, M.D., | § | |
| STATIM HEALTHCARE | § | |
| SOLUTIONS, LLC, | § | IN THE DISTRICT COURT |
| ALLIED LAB SOLUTIONS | § | OF |
| MANAGEMENT, LLC, AND LN | § | |
| PROFESSIONAL MANAGEMENT, | § | |
| LLC, D/B/A MEDICAL | § | |
| MANAGEMENT PROFESSIONALS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| KELLY DAWSON, WILLIAM | § | 419TH JUDICIAL |
| FRANKLIN, M.D., AND TOTH | § | DISTRICT |
| ENTERPRISES II, P.A., | § | |
| | § | |
| *Defendants.* | | |

## DECLARATION OF SHAWN AGENBROAD-ELANDER, NP

SHAWN AGENBROAD-ELANDER, being first duly sworn, declares as follows:

1.      This declaration is made under Tex. Civ. Prac. & Rem. Code § 132.001 in opposition to Plaintiffs' Traditional Motion for Summary Judgment.

2.      My name is Shawn Agenbroad-Elander, NP.; I am over the age of 21; I have never been convicted of a felony; I am over the age of 21; I am competent, of sound mind, have never been convicted of a felony, and I make this declaration stating matters known to me of my own personal knowledge.

1

**EXHIBIT D - 2**

3.      I am a nurse practitioner, licensed to practice medicine in the state of Texas. In 2016, I invested in and became a member of Allied Lab Services; LLC ("ALS I"). I was a Class A member, and I own a 2% membership share of ALS I.

4.      I never voted for or consented to a dissolution of ALS I.

5.      Sometime in early 2022, I was informed that ALS I had been terminated or dissolved by its then current manager, Jean Paul Forage. Thereafter I and a majority of all the outstanding members by percentage interest of ALS I resolved (see exhibit A hereto at page 1) as follows:

> Without the consent of shareholders, without knowledge of shareholders, and without written consent of approval from shareholders, the Manager terminated the operating agreement of Allied Lab Solutions, LLC.

My signature appears on the attached resolution and was executed and notarized on February 18, 2022. *Id.*, p. 3 1. We also resolved to remove the then current manager, Jean Paul Forage, and in his place to install Mr. Kelly Dawson as interim manager. See Exhibit A page 2.

.6.      Thereafter, I understood that ALS I was going to be reactivated and that the interim manager, Mr. Dawson was going to appoint Dr. William Franklin as the manager of ALS I and I specifically approved of both the activation of ALS I and the appointment of Dr. Franklin as manager.

7.      I also believed that I was a member of Allied Lab Solutions Management, LLC ("ALS Management.") However, unlike with ALS I, neither I nor the other persons who I believed to have been members of ALS Management can find the Company Agreement or the Member Agreement for ALS Management. Based on my belief that I

2

**EXHIBIT D - 3**

was a member, however, I also voted, as reflected in Exhibit A, to remove Jean Paul Forage as the member of ALS Management, replace him with Kelly Dawson and I understood that ALS Management was also going to be reopened and that Dr. Franklin was going to be the manager, just as was the case with ALS I described above.

I declare under penalty of perjury that the forging is true to the best of my memory.

Executed this 13 day of March, 2023 in Austin, Texas.

Shawn Agenbroad-Elander

3

PLT00300

**EXHIBIT D - 4**

CAUSE NO. D-1-GN-22-006595

| | | |
|---|---|---|
| JEAN-PIERRE FORAGE, M.D., | § | |
| STATIM HEALTHCARE | § | |
| SOLUTIONS, LLC, | § | IN THE DISTRICT COURT |
| ALLIED LAB SOLUTIONS | § | OF |
| MANAGEMENT, LLC, AND LN | § | |
| PROFESSIONAL  MANAGEMENT, | § | |
| LLC, D/B/A MEDICAL | § | |
| MANAGEMENT PROFESSIONALS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| KELLY DAWSON, WILLIAM | § | 419TH JUDICIAL |
| FRANKLIN, M.D., AND TOTH | § | DISTRICT |
| ENTERPRISES II, P.A., | § | |
| | § | |
| *Defendants.* | | |

## DECLARATION OF BRITTANI ADAMS, NP

BRITTANI ADAMS, being first duly sworn, declares as follows:

1.     This declaration is made under Tex. Civ. Prac. & Rem. Code § 132.001 in opposition to Plaintiffs' Traditional Motion for Summary Judgment.

2.     My name is Brittani Adams, NP.; I am over the age of 21; I have never been convicted of a felony; I am over the age of 21; I am competent, of sound mind, have never been convicted of a felony, and I make this declaration stating matters known to me of my own personal knowledge.

1

**PLT00310**

**EXHIBIT D - 5**

3.     I am a Nurse Practitioner, licensed to practice medicine in the state of Texas. In 2016, I invested in and became a member of Allied Lab Services; LLC ("ALS I"). I was a Class A member, and I own a 2% membership share of ALS I.

4.     I never voted for or consented to a dissolution of ALS I.

5.     Sometime in early 2022, I was informed that ALS I had been terminated or dissolved by its then current manager, Jean Paul Forage. Thereafter I and a majority of all the outstanding members by percentage interest of ALS I resolved (see exhibit A hereto at page 1) as follows:

> Without the consent of shareholders, without knowledge of shareholders, and without written consent of approval from shareholders, the Manager terminated the operating agreement of Allied Lab Solutions, LLC.

My signature appears on the attached resolution and was executed and notarized on February 18, 2022. *Id.*, p. 3 1. We also resolved to remove the then current manager, Jean Paul Forage, and in his place to install Mr. Kelly Dawson as interim manager. See Exhibit A page 2.

6.     Thereafter, I understood that ALS I was going to be reactivated and that the interim manager, Mr. Dawson was going to appoint Dr. William Franklin as the manager of ALS I and I specifically approved of both the activation of ALS I and the appointment of Dr. Franklin as manager.

2

PLT00311

**EXHIBIT D - 6**

7.      I also believed that I was a member of Allied Lab Solutions Management, LLC ("ALS Management.") However, unlike with ALS I, neither I nor the other persons who I believed to have been members of ALS Management can find the Company Agreement or the Member Agreement for ALS Management. Based on my belief that I was a member, however, I also voted, as reflected in Exhibit A, to remove Jean Paul Forage as the member of ALS Management, replace him with Kelly Dawson and I understood that ALS Management was also going to be reopened and that Dr. Franklin was going to be the manager, just as was the case with ALS I described above.

I declare under penalty of perjury that the forging is true to the best of my memory.

Executed this 13th day of March, 2023 in Austin, Texas.

Brittani Adams

PLT00312

**EXHIBIT D - 7**

CAUSE NO. D-1-GN-22-006595

| | | |
|---|---|---|
| JEAN-PIERRE FORAGE, M.D., | § | |
| STATIM HEALTHCARE | § | |
| SOLUTIONS, LLC, | § | IN THE DISTRICT COURT |
| ALLIED LAB SOLUTIONS | § | OF |
| MANAGEMENT, LLC, AND LN | § | |
| PROFESSIONAL  MANAGEMENT, | § | |
| LLC, D/B/A MEDICAL | § | |
| MANAGEMENT PROFESSIONALS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | 419TH JUDICIAL |
| KELLY DAWSON, WILLIAM | § | DISTRICT |
| FRANKLIN, M.D., AND TOTH | § | |
| ENTERPRISES II, P.A., | § | |
| | § | |
| *Defendants.* | | |

DECLARATION OF KATHERINE KELLER, DO

KATHERINE KELLER, being first duly sworn, declares as follows:

1.     This declaration is made under Tex. Civ. Prac. & Rem. Code § 132.001 in opposition to Plaintiffs' Traditional Motion for Summary Judgment.

2.     My name is Katherine Keller, D.O..; I am over the age of 21; I have never been convicted of a felony; I am competent, of sound mind, have never been convicted of a felony, and I make this declaration stating matters known to me of my own personal knowledge.

1

**PLT00322**

**EXHIBIT D - 8**

3.    I am a Doctor of Osteopathic Medicine, licensed to practice medicine in the state of Texas. In 2016, I invested in and became a member of Allied Lab Services; LLC ("ALS I"). I was a Class A member, and I own a 2% membership share of ALS I.

4.    I never voted for or consented to a dissolution of ALS I.

5.    Sometime in early 2022, I was informed that ALS I had been terminated or dissolved by its then current manager, Jean Paul Forage. Thereafter I and a majority of all the outstanding members by percentage interest of ALS I resolved (see exhibit A hereto at page 1) as follows:

> Without the consent of shareholders, without knowledge of shareholders, and without written consent of approval from shareholders, the Manager terminated the operating agreement of Allied Lab Solutions, LLC.

My signature appears on the attached resolution and was executed and notarized on February 18, 2022. *Id.*, p. 3 1. We also resolved to remove the then current manager, Jean Paul Forage, and in his place to install Mr. Kelly Dawson as interim manager. See Exhibit A page 2.

6.    Thereafter, I understood that ALS I was going to be reactivated and that the interim manager, Mr. Dawson was going to appoint Dr. William Franklin as the manager of ALS I and I specifically approved of both the activation of ALS I and the appointment of Dr. Franklin as manager.

7.    I also believed that I was a member of Allied Lab Solutions Management, LLC ("ALS Management.") However, unlike with ALS I, neither I nor the other persons who I believed to have been members of ALS Management can find the Company Agreement or the Member Agreement for ALS Management. Based on my belief that I

2

PLT00323

**EXHIBIT D - 9**

was a member, however, I also voted, as reflected in Exhibit A, to remove Jean Paul

Forage as the member of ALS Management, replace him with Kelly Dawson and I

understood that ALS Management was also going to be reopened and that Dr. Franklin

was going to be the manager, just as was the case with ALS I described above.

I declare under penalty of perjury that the forging is true to the best of my

memory.

Executed this 14th day of March, 2023 in Austin, Texas.

_Dr. Katherine Keller_
Dr. Katherine Keller (Mar 14, 2023 17:34 CDT)
Katherine Keller

3

PLT00324

**EXHIBIT D - 10**

CAUSE NO. D-1-GN-22-006595

| | | |
|---|---|---|
| JEAN-PIERRE FORAGE, M.D., | § | |
| STATIM HEALTHCARE | § | |
| SOLUTIONS, LLC, | § | IN THE DISTRICT COURT |
| ALLIED LAB SOLUTIONS | § | OF |
| MANAGEMENT, LLC, AND LN | § | |
| PROFESSIONAL MANAGEMENT, LLC, | § | |
| D/B/A MEDICAL | § | |
| MANAGEMENT PROFESSIONALS | § | TRAVIS COUNTY, TEXAS |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | 419TH JUDICIAL |
| KELLY DAWSON, WILLIAM | § | DISTRICT |
| FRANKLIN, M.D., AND TOTH | § | |
| ENTERPRISES II, P.A., | § | |
| | § | |
| *Defendants.* | § | |

<u>DECLARATION OF NATHAN PEKAR, MD</u>

NATHAN PEKAR, being first duly sworn, declares as follows:

1. This declaration is made under Tex. Civ. Prac. & Rem. Code § 132.001 in opposition to Plaintiffs' Traditional Motion for Summary Judgment.

2. My name is Nathan Pekar, M.D.; I am over the age of 21; I have never been convicted of a felony; I am over the age of 21; I am competent, of sound mind, have never been convicted of a felony, and I make this declaration stating matters known to me of my own personal knowledge.

3. I am a medical doctor, licensed to practice medicine in the state of Texas. In 2016, I invested in and became a member of Allied Lab Services; LLC ("ALS I"). I was a Class A member, and I own a 2% membership share of ALS I.

4. I never voted for or consented to a dissolution of ALS I.

5. Sometime in early 2022, I was informed that ALS I had been terminated or dissolved by its then current manager, Jean Paul Forage. Thereafter I and a majority of all the outstanding members by percentage interest of ALS I resolved (see exhibit A hereto at page 1) as follows:

> Without the consent of shareholders, without knowledge of shareholders, and without written consent of approval from shareholders, the Manager terminated the operating agreement of Allied Lab Solutions, LLC.

My signature appears on the attached resolution and was executed and notarized on February 18, 2022. *Id.*, p. 3 1. We also resolved to remove the then current manager, Jean Paul Forage, and in his place to install Mr. Kelly Dawson as interim manager. See Exhibit A page 2.

6. Thereafter, I understood that ALS I was going to be reactivated and that the interim manager, Mr. Dawson was going to appoint Dr. William Franklin as the manager of ALS I and I specifically approved of both the activation of ALS I and the appointment

**PLT00335**

**EXHIBIT D - 11**

of Dr. Franklin as manager.

7. I also believed that I was a member of Allied Lab Solutions Management, LLC ("ALS Management.") However, unlike with ALS I, neither I nor the other persons who I believed to have been members of ALS Management can find the Company Agreement or the Member Agreement for ALS Management. Based on my belief that I was a member, however, I also voted, as reflected in Exhibit A, to remove Jean Paul Forage as the member of ALS Management, replace him with Kelly Dawson and I understood that ALS Management was also going to be reopened and that Dr. Franklin was going to be the manager, just as was the case with ALS I described above.

I declare under penalty of perjury that the forging is true to the best of my memory.

Executed this 13 day of March, 2023 in Austin, Texas.

_____

Nathan Pekar

2

**EXHIBIT D - 12**

CAUSE NO. D-1-GN-22-006595

| | | |
|---|---|---|
| JEAN-PIERRE FORAGE, M.D., | § | |
| STATIM HEALTHCARE | § | |
| SOLUTIONS, LLC, | § | IN THE DISTRICT COURT |
| ALLIED LAB SOLUTIONS | § | OF |
| MANAGEMENT, LLC, AND LN | § | |
| PROFESSIONAL  MANAGEMENT, | § | |
| LLC, D/B/A MEDICAL | § | |
| MANAGEMENT PROFESSIONALS | § | TRAVIS COUNTY, TEXAS |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | 419TH JUDICIAL |
| KELLY DAWSON, WILLIAM | § | DISTRICT |
| FRANKLIN, M.D., AND TOTH | § | |
| ENTERPRISES II, P.A., | § | |
| | § | |
| *Defendants.* | | |

## DECLARATION OF SARITA PRAJAPATI, MD

SARITA PRAJAPATI, being first duly sworn, declares as follows:

1.      This declaration is made under Tex. Civ. Prac. & Rem. Code § 132.001 in opposition to Plaintiffs' Traditional Motion for Summary Judgment.

2.      My name is Sarita Prajapati, M.D.; I am over the age of 21; I have never been convicted of a felony; I am over the age of 21; I am competent, of sound mind, have never been convicted of a felony, and I make this declaration stating matters known to me of my own personal knowledge.

1

PLT00346

**EXHIBIT D - 13**

3.    I am a medical doctor, licensed to practice medicine in the state of Texas. In 2016, I invested in and became a member of Allied Lab Services; LLC ("ALS I"). I was a Class A member, and I own a 1% membership share of ALS I.

4.    I never voted for or consented to a dissolution of ALS I.

5.    Sometime in early 2022, I was informed that ALS I had been terminated or dissolved by its then current manager, Jean Paul Forage. Thereafter I and a majority of all the outstanding members by percentage interest of ALS I resolved (see exhibit A hereto at page 1) as follows:

> Without the consent of shareholders, without knowledge of shareholders, and without written consent of approval from shareholders, the Manager terminated the operating agreement of Allied Lab Solutions, LLC.

My signature appears on the attached resolution and was executed and notarized on February 18, 2022. *Id.*, p. 3 1. We also resolved to remove the then current manager, Jean Paul Forage, and in his place to install Mr. Kelly Dawson as interim manager. See Exhibit A page 2.

6.    Thereafter, I understood that ALS I was going to be reactivated and that the interim manager, Mr. Dawson was going to appoint Dr. William Franklin as the manager of ALS I and I specifically approved of both the activation of ALS I and the appointment of Dr. Franklin as manager.

7.    I also believed that I was a member of Allied Lab Solutions Management, LLC ("ALS Management.") However, unlike with ALS I, neither I nor the other persons who I believed to have been members of ALS Management can find the Company Agreement or the Member Agreement for ALS Management. Based on my belief that I

PLT00347

**EXHIBIT D - 14**

was a member, however, I also voted, as reflected in Exhibit A, to remove Jean Paul Forage as the member of ALS Management, replace him with Kelly Dawson and I understood that ALS Management was also going to be reopened and that Dr. Franklin was going to be the manager, just as was the case with ALS I described above.

I declare under penalty of perjury that the forging is true to the best of my memory.

Executed this 13 day of March, 2023 in Austin, Texas.

Sarita Prajapati

3

**PLT00348**

[Exhibit A to Declarations]   **EXHIBIT D - 15**

| | | |
|---|---|---|
| **KNOWN BY ALL** | § | |
| **PRESENT TAKE NOTICE:** | § | **STATE OF TEXAS, COUNTY OF TRAVIS** |

---

### ACTION BY WRITTEN CONSENT OF SHAREHOLDERS OF ALLIED LAB SOLUTIONS, LLC., ALLIED LAB SOLUTIONS MANAGEMENT LLC.

### CALLING FOR APPOINTMENT OF NEW MANAGING MEMBER

We, the undersigned, comprised of a majority of shareholders of Allied Lab Solutions, LLC., and Allied Lab Solutions Management LLC.,—(hereinafter known as "entities") confer, agree, acknowledge, and ratify the following:

**THAT**, for valuable consideration, duly recognized and accepted, each and all shareholders purchased valuable rights into the above-referenced entities;

**THAT**, the terms of this agreement were memorialized by that certain document—(hereinafter known as MSO)—executed on July 2016;

**THAT**, the shareholders, with an overwhelming agreement, have concluded the Manager of MSO has engaged in a pattern of self-dealing, acts of omission, and negligence;

**THAT**, Allied Lab Solutions, Management, LLC, was duly filed with the Texas Secretary of State's Office on July 11, 2026, under Texas Secretary of State file Number 0802495975;

**THAT**, Allied Lab Solutions, LLC, was duly filed as a domestic corporation with the Texas Secretary of State's Office on August 15, 2016, under Texas Secretary of State file Number 802520728.

**ADDITIONALLY**, the shareholders conclude that in violation of the governing document, and in violation of TEX. BUS. ORG. CODE. §§§21.416, 409, TEX. BUS. COM. CODE. §§3.307, the Manager, by act, or omission, and negligence has caused immediate and irreputable harm to the shareholders by:

Without the consent of shareholders, without knowledge of the shareholders, and without expressed written consent of approval by shareholders, the Manager terminated the business entity of Allied Lab Solutions Management, LLC;

Without the consent of shareholders, without knowledge of the shareholders, and without expressed written consent of approval by shareholders, the Manager terminated the business entity Allied Lab Solutions, LLC.

**PLT00349**

**EXHIBIT D - 16**

**WHEREAS**: the shareholders have considered these violations of contract and law and concluded that the Managing Member of Allied Lab Solutions LLC., and Allied Lab Solutions Management LLC, has engaged in a pattern of acts of self-dealing, acts of omission, and negligence and must be removed with a new Manager appointed.

**NOW, THEREFORE**, it is resolved that J.P. Forage shall be **removed** as Managing Member/Director of Allied Lab Solutions LLC., and Allied Lab Solutions Management LLC, or a person of authority to act on behalf of the above referenced.

The undersigned consent, agree, acknowledge and ratify that immediately, the Law Firm of the Dawson Group, P.C., shall be installed as interim Manager, for **no more** than thirty (30) days, or until the majority of shareholders elect a new Managing Member.

The rights, duties, and obligations, of the interim Managing Member, shall be the same of a standing Managing Member.

By execution of verified signatures, these shareholders agree this document to be true in form, accurate, and correct. This document may be executed in counterparts to mean, that each party may execute at a different time, date, and location, yet will be considered as each where present at the same time, date, and location.

## <u>THE SHAREHOLDERS ARE DULY AUTHORIZED TO PERFORM THE ACTS TO CARRY OUT THIS RESOLUTION.</u>

**This document requires signatures of the undersigned in the presence of a licensed Notary Public for the State of Texas.**

**(SEVEN SIGNATURE PAGES TO FOLLOW)**

**EXHIBIT D - 17**

**EXECUTED ON THIS** _18th_ DAY OF FEBRUARY, 2022

By: _____

Brittani Adams, as a shareholder

## **VERIFICATION**

I, Brittani Adams, a resident of the State of Texas, County of Tarrant, City of Fort Worth, did appear before, Michelle Lynne Flamant. I presented verified State issues identification, thereafter, in the presence of this State official, I executed the foregoing document.

By: _____

Brittani Adams

ON THIS DAY, _18th_ of February, 2022, Brittani Adams did appear in front of me personally, the undersigned Notary for the State of Texas. After examining State issued credentials that were presented, the document was duly executed in my presences and bears my license number.

Notary Signature: _____

Seal:

MICHELLE LYNNE FLAMANT
My Notary ID # 128031066
Expires September 3, 2025

**EXHIBIT D - 18**

**EXECUTED ON THIS** 17 DAY OF FEBRUARY, 2022

By: _____
Sharon Shepherd, as a shareholder

## **VERIFICATION**

I, Sharon Shepherd, a resident of the State of Texas, County of Travis, City of Austin, did appear before, Michelle Lynne Flamant I presented verified State issues identification, thereafter, in the presence of this State official, I executed the foregoing document.

By: _____
Sharon Shepherd

ON THIS DAY, 17 of February, 2022, Sharon Shepherd did appear in front of me personally, the undersigned Notary for the State of Texas.  After examining State issued credentials that were presented, the document was duly executed in my presences and bears my license number.

Notary Signature _____

Seal: _____

MICHELLE LYNNE FLAMANT
My Notary ID # 128031066
Expires September 3, 2025

**EXHIBIT D - 19**

**EXECUTED ON THIS** 16 **DAY OF FEBRUARY, 2022**

By: _____
    Nathan Pekar, as a shareholder

## VERIFICATION

I, Nathan Pekar, a resident of the State of Texas, County of Travis, City of Austin, did appear before, Michelle Lynne Flamant I presented verified State issues identification, thereafter, in the presence of this State official, I executed the foregoing document.

By: _____
    Nathan Pekar

ON THIS DAY, 16 of February, 2022, Nathan Pekar did appear in front of me personally, the undersigned Notary for the State of Texas. After examining State issued credentials that were presented, the document was duly executed in my presence and bears my license number.

Notary Signature: _____

Seal: _____

MICHELLE LYNNE FLAMANT
My Notary ID # 128031066
Expires September 3, 2025

PLT00353

**EXHIBIT D - 20**

**EXECUTED ON THIS** 16 **DAY OF FEBRUARY, 2022**

By: _____
Sarita Prajapati, as a shareholder

## VERIFICATION

I, Sarita Prajapati, a resident of the State of Texas, County of Travis, City of Austin, did appear before, Michele Lynn Flamant presented verified State issues identification, thereafter, in the presence of this State official, I executed the foregoing document.

By: _____
Sarita Prajapati

ON THIS DAY, 16 of February, 2022, Sarita Prajapati did appear in front of me personally, the undersigned Notary for the State of Texas. After examining State issued credentials that were presented, the document was duly executed in my presence and bears my license number.

Notary Signature: _____

Seal: 

MICHELLE LYNNE FLAMANT
My Notary ID # 128031066
Expires September 3, 2025

**(END OF DOCUMENT)**

PLT00354

**EXHIBIT D - 21**

**EXECUTED ON THIS** 15th **DAY OF FEBRUARY, 2022**

By: _____
William Franklin, as authorized of agent
Toth Enterprises, II, acting as shareholder

## **VERIFICATION**

I, William Franklin, as authorized of agent Toth Enterprises, II, acting as a shareholder, a resident of the State of Texas, County of Travis, City of Austin, did appear before, Michelle Lynne Flamant. I presented verified State issues identification, thereafter, in the presence of this State official, I executed the foregoing document.

By: _____
William Franklin, as authorized agent
Toth Enterprises, II, acting as shareholder

ON THIS DAY, 15th of February, 2022, William Franklin, as authorized agent Toth Enterprises, II, acting as shareholder did appear in front of me personally, the undersigned Notary for the State of Texas.  After examining State issued credentials that were presented, the document was duly executed in my presence and bears my license number.

Notary Signature: _____

MICHELLE LYNNE FLAMANT
My Notary ID # 128031066
Expires September 3, 2025

Seal: _____

**PLT00355**

**EXHIBIT D - 22**

**EXECUTED ON THIS** 15th **DAY OF FEBRUARY, 2022**

By: _____
       William Franklin, as a shareholder

## **VERIFICATION**

I, William Franklin, a resident of the State of Texas, County of Travis, City of Austin, did appear before, Michelle Lynne Flamant. I presented verified State issues identification, thereafter, in the presence of this State official, I executed the foregoing document.

By: _____
       William Franklin

ON THIS DAY, 15th of February, 2022, William Franklin did appear in front of me personally, the undersigned Notary for the State of Texas.  After examining State issued credentials that were presented, the document was duly executed in my presence and bears my license number.

Notary Signature: _____

MICHELLE LYNNE FLAMANT
My Notary ID # 128031066
Expires September 3, 2025

Seal: _____

**EXHIBIT D - 23**

**EXECUTED ON THIS** _15_ DAY OF FEBRUARY, 2022

By: _____

Shawn Agenbroad-Elander, as a shareholder

## **VERIFICATION**

I, Shawn Agenbroad-Elander, a resident of the State of Texas, County of Travis, City of Austin, did appear before, Michelle Lynne Flamant I presented verified State issues identification, thereafter, in the presence of this State official, I executed the foregoing document.

By: _____

Shawn Agenbroad-Elander

ON THIS DAY, _15th_ of February, 2022, Shawn Agenbroad-Elander did appear in front of me personally, the undersigned Notary for the State of Texas.  After examining State issued credentials that were presented, the document was duly executed in my presence and bears my license number.

Notary Signature: _____

Seal:

```
MICHELLE LYNNE FLAMANT
My Notary ID # 128031066
Expires September 3, 2025
```

**PLT00357**

**CONFIDENTIAL**                                                    **EXHIBIT E - 1**

**John Markham**

| | |
|---|---|
| **From:** | John Markham |
| **Sent:** | Thursday, August 25, 2022 1:10 PM |
| **To:** | Jim Clements |
| **Cc:** | Bridget Zerner |
| **Subject:** | Various Matters |
| **Attachments:** | Spread Sheet of Funds Disbursed.pdf |

Hi Jim:

I hope your vacation went well. I am writing to let you know where we are on the clawback claims and the antitrust lawsuit.

### The Clawback Claims

As to these claims, we have spent a great deal of time reviewing available records to determine whether there is any basis for the large clawback claims being asserted by Lewis and MMP. We have spoken at length to JP Forage about this issue as well. Here is where we are: The matter needs to be subject to an audit. We understand that, under the Services Agreement that MMP entered into with Allied, the net revenue owed Allied is arrived at by subtracting costs of goods sold from the gross revenue. However, now that there is money from the Knox settlement with Blue Cross, there is all of a sudden presented a bill for more than $3,000,000 in costs. I have now reviewed the checks issued by Knox to MMP on and after May, 2019 which is when the last payment was made from MMP to Allied. After that payment, fully $2,425,724.67 dollars was paid by Knox to MMP in separate payments commencing in June, 2019 and continuing through the summer on 2020. See the attached spred sheet and the amounts highlighted in red. These are the sums reflected by the checks I have seen payable by Knox to MMP and the dates on the spreadsheet are the dates on each of the checks. Therefore these amounts cannot be the subject of argument. Yet nothing was paid from any of those payments by MMP to Allied -- not a cent.

I have read a transcript of Clay's testimony in which there was no mention of clawbacks. Instead, Clay testified that after the April 2019 payment, MMP received *no money* from Knox. This is quite troubling. Now that there is money, at least the money that Blue Cross paid Knox in the recent settlement, all of a sudden there is this clawback claim which is supposed to net out that Allied owes MMP over $3,000,000 in costs over and above that money that was paid to MMP (for division between Allied and MMP under the Services Agreement) from the Blue Cross/Knox settlement agreement. That is a highly suspect claim. For it to be accurate the "clawback" costs incurred by MMP must have exceeded over $3,000,000 dollars over and above the following two sums of money: Allied's percentage of the excess of $2,425,724.67 paid to MMP by Knox after April, 2019 (per the attached spread sheet) and Allied's share of the approximate $7,000,000 that is the amount of the Knox Blue Cross settlement after Knox

**CONFIDENTIAL**                                    **PLT002793**

deducted its 25% and its costs. That, Jim, is one hell of a clawback. Billy will not accept that computation without an audit of the bank records of MMP to determine exactly how much it paid in legitimate costs. Frankly, the way this has been handled and explained by Clay, it seems that the entire three years needs to be audited or at least spot checked and all the costs documented. I hasten to add that this would be not just the money that MMP received from Knox, but also the money that MMP received from Glen Rose. Arbitration which is simply, in essence, an audit by a neutral accountant without any collateral cost-elevating depositions, motions and the like, seems clearly the best way. After all, if this matter stays in court, either the Collmer suit that preexisted the settlement between Knox and Blue Cross and the suit over the Knox/Blue Cross settlement monies, the same issues would have to be resolved. Clearly, at least to us, the arbitration we propose is the better way to go. Bank statements do not lie about what was paid and when it was paid.

We are willing to have this done in the context of a binding arbitration where the simple issue would be: How much money did MMP receive from Knox and Glen Rose, how much money did MMP pay for legitimate costs properly deducted from those Knox and Glen Rose payments and therefore how much is Allied owed.

One last thought as to arbitration: in a publicly accessible court suit, the chances are high that Blue Cross would intervene claiming some sort of kickback theory and claiming that the amounts involved belong to it.



**Kim Wiley**

I am going to be representing Kim Wiley. As you know she is at least a 20% member of MMP and likely more than that percentage since two other members left and the remaining members, including Kim, absorbed their pro rate percentage of the shares of the departing members. The accounting se suggest – and again which would happen in a lawsuit as well as in arbitration, affects her greatly since she has received no payments from MMP since April, 2021. Incidentally, as a significant MMP member she urges you to urge MMP to file an antitrust claim since she would be entitled to huge sums if that suit were successful. MMP management should not leave the potential payout from such a suit to the financial detriment of all its members, including KIM.

Let me know.

John J. E. Markham, II
MARKHAM READ ZERNER LLC
One Commercial Wharf West
Boston, MA 02110
T. 617.523.6329
F. 617.742.8604

www.markhamreadzerner.com

MARKHAM READ ZERNER LLC is a law office. This document may contain confidential matters or matters protected from disclosure by the attorney-client privilege. Any inadvertent disclosure of the content of this document to any unintended recipient is not intended to be, nor is it, a waiver of this privilege.

If you have received this email in error, please advise us by return email and delete the contents of the email. Thank you.